**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JOHN LOUSTEAU**, | |
| *Plaintiff*, | **CIVIL ACTION NO.:** |
| **VERSUS** | **2:21-cv-01457-JCZ-KWR** |
| **CONGREGATION OF HOLY CROSS SOUTHERN PROVINCE, INC.** and **HOLY CROSS COLLEGE, INC.** | |
| *Defendants*. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

LAW AND ARGUMENT ...................................................................................... 3

I.      Legal Standards.......................................................................................... 3

II.     Act 322's revival provision does not apply to Plaintiff's claims against Holy Cross. ....... 4

        A.      The revival provision does not apply to claims, like Plaintiff's, that prescribed under different laws decades ago. ........................................ 4

        B.      The revival provision applies only to claims for "sexual abuse of a minor," which does not encompass Plaintiff's claims against Holy Cross................................... 5

        C.      The revival provision extends only to the "parties" to the abuse—i.e., the abused and the abuser. ................................................................... 7

III.    The revival of Plaintiff's prescribed claims against Holy Cross would be unconstitutional. ................................................................................................ 9

        A.      The revival of the prescribed claims against Holy Cross would violate due process. ................................................................................................. 9

        B.      The revival of the prescribed claims against Holy Cross also would violate the constitutional prohibitions against bills of attainder. ............................ 15

CONCLUSION ...................................................................................................... 25

CERTIFICATE OF SERVICE .............................................................................. 27

Appendix A ............................................................................................................ 28

## INTRODUCTION

Plaintiff John Lousteau ("Plaintiff") alleges that when he was a minor in the late 1960s, a man named Stanley Repucci sexually abused him on two separate occasions. *See* Complaint ("Compl.") ¶ 11; First Amended Complaint ("FAC") ¶ I. Plaintiff alleges that Mr. Repucci was a Brother of the Brothers of Congregation of Holy Cross, Moreau Province, Inc. ("Congregation of Holy Cross") and a teacher at Holy Cross College, Inc. ("Holy Cross School") (collectively with "Congregation of Holy Cross," "Holy Cross") at the time of the abuse. *See* Complaint ¶¶ 10, 20. Plaintiff alleges that the two instances of sexual abuse occurred while Plaintiff attended a summer camp at Holy Cross School, where he would encounter Mr. Repucci. *See id.* ¶ 11. The claims against Holy Cross are based solely on the contention that the alleged perpetrator was an employee or agent of Holy Cross. Plaintiff alleges that the last act of abuse occurred, at the latest, in 1969. *See id.* Therefore, to the extent Plaintiff can assert any tort claims against Holy Cross, those claims were prescribed by the end of 1970, at the latest, under La. Civ. Code art. 3492's one-year prescriptive period.[1]

Nevertheless, in August 2021—over a half-century later—Plaintiff sued Holy Cross, asserting torts claims under Art. 2315 of the Louisiana Civil Code based on the allege abuse by Mr. Repucci. As best Holy Cross can tell, Plaintiff proceeds under the mistaken belief that subsequent legislative actions—namely, Act 322's revisions to La. R.S. 9:2800.9—revived his long-ago prescribed claims.[2]

---

[1] La. Civ. Code art. 3492, which was enacted in 1983, "reproduced the substance of Article 3536(1), and the second sentence that of Article 3537(2), of the Louisiana Civil Code of 1870." La. Civ. Code art. 3492, 1983 Rev. Cmt. (a). Art. 3492's enactment did "not change the law." *Id.* References herein to art. 3492 include its predecessor provisions.

[2] Plaintiff's Complaint is silent about whether he intends to maintain the argument that repressed memory prevented Plaintiff's claim from prescribing in the first instance. Holy Cross respectfully

In 1993, the Louisiana legislature enacted La. R.S. 9:2800.9.[3] Section 9:2800.9 extended the prescriptive period on certain sexual abuse claims, instructing: "An action against a person for sexual abuse of a minor . . . is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority. . . ." La. R.S. 9:2800.9 was not retroactive when enacted and, as set forth below, did not affect Plaintiff's already prescribed claims. *See, e.g.*, *Hall v. Hall*, 516 So.2d 119, 120 (La. 1987); *see also Jayson Doe v. Jesuit High School of New Orleans et al.*, 21-0284 (La. App. 4 Cir. 11/10/21); -- So.3d --, slip op. at 7 ("This Court agrees that Subsection A governing the prescriptive period of La. R.S. 9:2800.9 affects vested rights; therefore it is substantive and cannot apply retroactively").[4]

Then, in June 2021, the legislature revised La. R.S. 9:2800.9 with the passage of Act 322. Act 322 provides in relevant part:

> A. (1) An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, does not prescribe.
>
> (2) An action against a person convicted of a crime against the child does not prescribe and may be filed at any time following conviction. "Crime against the child" has the same meaning as provided in Children's Code Article 603.
>
> Section 2. For a period of three years following the effective date of this Act, any party whose action under R.S. 9:2800.9 was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. It is the intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act.

---

reserves its right to present further argument and evidence to oppose any contention that *contra non valentem* applies.

[3] La. R.S. 9:2800.9 was designated originally La. Civil Code art. 3498.1.

[4] The *Jayson Doe* opinion is attached hereto as Exhibit A.

2

Section A(1-2) of Act 322 eliminates any prescriptive period for a certain category of sexual abuse claims. Section A(1-2) applies prospectively only to future cases.

Section 2, attempts to provide that a narrow subcategory of claims may be "revived," even though they previously prescribed under § 9:2800.9's ten-year prescriptive period. Act 322's effective date is June 14, 2021. The statute does not purport to be retroactive related to claims that prescribed prior to § 9:2800.9's original 1993 enactment date.

Aside from the fact that the language of Act 322 neither applies to nor revives Plaintiff's claims, for the reasons discussed below, the revival of Plaintiff's claims would violate the Louisiana and United States Constitutions. Accordingly, because Plaintiff's claims have not been revived and are barred by the one-year prescriptive period under La. Civ. Code art. 3492, Holy Cross respectfully requests that the Complaint be dismissed.

## LAW AND ARGUMENT

### I.    Legal Standards.

The standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6). *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Where the well-pleaded facts of a complaint "do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (quoting Fed. Rule Civ. P. 8(a)(2)). Thus, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009); *see also Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). Further, although courts are required to take as true all factual

allegations of the complaint, they are not bound to accept labels, conclusions, or formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. A court may also take judicial notice of matters of public record when deciding a motion to dismiss. *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9(5th Cir. 2007).

**II.    <u>Act 322's revival provision does not apply to Plaintiff's claims against Holy Cross.</u>**

      **A.    The revival provision does not apply to claims, like Plaintiff's, that prescribed under different laws decades ago.**

Plaintiff's claims prescribed under the one-year prescriptive period of La. Civ. Code art. 3492 by the end of 1970, at the latest. The earliest version of § 9:2800.9 was not enacted until over two-decades later.

Act 322's revival provision (Section 2) by its own terms applies only to claims that prescribed under the prior version of § 9:2800.9. Section 2, which is only two sentences long, references § 9:2800.9 ***four separate times***. It ***never*** mentions any other prescription provisions that existed before § 9:2800.9, such as La. Civ. Code art. 3492, and it does not purport to have any effect on them. The explicit language of Section 2 is clear on this point. First, it applies only to parties "whose action **under R.S. 9:2800.9** was barred by liberative prescription." (emphasis added). Here, Plaintiff never had an action "under R.S. 9:2800.9"; his claim prescribed more than 20-years prior. Second, the purported legislative intent provision of Section 2 states that it is "the intent of the legislature to revive . . . any claim against a party, **authorized by R.S. 9:2800.9**, that prescribed . . . ." (emphasis added). Again, Plaintiff never had a claim "authorized by R.S. 9:2800.9." His claim had already prescribed, and R.S. 9:2800.9, enacted more than 20-years later, did not retroactively authorize any such claim.[5]

---

[5] Ex. A, *Jayson Doe*, slip op. at 7, *supra* ("This Court agrees that Subsection A governing the prescriptive period of La. R.S. 9:2800.9 affects vested rights; therefore it is substantive and cannot apply retroactively"); *See also G.B.F. v. Keys*, 29,006 (La. App. 2 Cir. 1/22/97), 687 So.2d 632,

4

Moreover, while Act 322 amends and reenacts § 9:2800.9, it does not purport to make that statute retroactive to conduct that pre-dated the statute's original 1993 effective date. The statute includes no language at all rendering it operative relative to pre-1993 torts. The legislative intent to revive claims only attempts to revive claims "under" or "authorized" by R.S. 9:2800.9, not any claims that were already prescribed and unaffected by R.S. 9:2800.9.  Indeed, legislative history indicates there was no intent to revive claims that prescribed decades ago. Senator Henry, who proposed the revival provision, explained: "[W]hat I want to do is make it *a little bit retroactive*. So should a case that prescribe, they – *we can go back a couple of years* to make sure that those individuals um, get the care they need . . . ."[6] Thus, Act 322 does not even purport to revive claims that prescribed under a separate law many years before R.S. 9:2800.9's original enactment in 1993. This reason alone is sufficient to dismiss Plaintiff's claims.

**B.    The revival provision applies only to claims for "sexual abuse of a minor," which does not encompass Plaintiff's claims against Holy Cross.**

Act 322 applies to claims for "sexual abuse of a minor." This language does not encompass a circumstance, as alleged by Plaintiff, in which an entity may be subject to indirect liability due to inadequate supervision.

In *SS v. State ex rel. Dep't of Soc. Servs.*, 2002-0831 (La. 12/4/02), 831 So.2d 926, 934, the Louisiana Supreme Court considered the prior version of La. R.S. 9:2800.9 and concluded that a plaintiff suing a state-contracted shelter care facility for the sexual abuse of a minor in its custody could invoke and benefit from the prescription period set forth in § 9:2800.9. Under that prior

---

635 ("We cannot apply…La. R.S. 9:2800.9 retroactively in this case because to do so would revive an already prescribed cause of action, infringing upon constitutionally vested rights. A statute enacted after the expiration of the plaintiff's cause of action by prescription cannot revive the already prescribed action."), *writ denied,* 97-0385 (La. 3/21/97), 691 So.2d 94.

[6] Ex. B, Tr. of June 7, 2021 HB 492 Final Passage at 2:12-16 (emphasis supplied).

version of the statute, the legislature defined "abuse" to have the same meaning as La. Children's Code art. 603(1). Art. 603(1) defined abuse to include physical or mental injury upon a child "as a result of inadequate supervision." *Id.* at 933. Thus, the Supreme Court reasoned, because the defendant "operated a shelter care facility . . . and as such had supervisory obligations over minors," including over "each foster child placed in the facility," and because the definition of abuse extended to "inadequate supervision," the plaintiff could proceed against the shelter under R.S. 9:2800.9. *See id.* at 934.

Significantly, Act 322 ***narrowed*** the definition of "sexual abuse of a minor" by ***removing*** its earlier reference to La. Ch. Code art. 603(1). Specifically, Act 322 deleted this sentence from La. R.S. 9:2800.9: "Abuse has the same meaning as provided in Louisiana Children's Code Article 603."[7] In doing so, the legislature unequivocally confined the meaning of "sexual abuse of a minor" to its natural language and deleted the text that prompted the broad definition of abuse used in *SS v. State*. In contrast, the legislature ***added*** a Children's Code citation relative to the prescriptive period applicable only to those natural persons convicted of "crimes against the child." *See* Act 322(A)(2) ("'Crime against the child' has the same meaning as provided in Children's Code Article 603.").[8] In this context (tort actions against natural persons convicted of crimes), § 9:2800.9 continues to apply expansively to conduct such as criminal neglect. *See* La. Ch. C. art. 603(12)(g). As revised, however, "sexual abuse of a minor" no longer has the more expansive meaning considered in *SS v. State.*

Absent the reference to the broad definition of "abuse" found in Children's Code art. 603(1), no natural reading of "sexual abuse of a minor" would include imposing liability on an

---

[7] *See* Ex. C.

[8] This provision is not at issue in Plaintiff's lawsuit.

entity, such as Holy Cross School or Congregation of Holy Cross School, on the basis of inadequate supervision.  Because Act 322 narrowed § 9:2800.9's meaning, it cannot extend to Plaintiff's claims against Holy Cross.

### C. The revival provision extends only to the "parties" to the abuse—i.e., the abused and the abuser.

As discussed above, the prior version of § 9:2800.9 could support corporate non-personal liability for child sexual abuse if the corporation had a specific legal duty to supervise the plaintiff. *See SS v. State*, 831 So.2d at 933–34. In that context, the Louisiana Supreme Court found that R.S. 9:2800.9 could extend to juridical entities, such as corporations. *See id.* ("Although the word 'person' may have different meanings in law, the general rule is that when the word 'person' is used in a statute, the statute applies to corporations as well as to natural persons if such corporations fall within the reason and purpose of the provisions of the statute."). By removing the citation to the Children's Code, however, the legislature eliminated the basis for the Louisiana Supreme Court's conclusion that § 9:2800.9 extends to juridical entities. Without the Children's Code reference to include juridical entities with supervisory obligations, only natural persons can sexually abuse minors. Thus, the current version of § 9:2800.9, which is penal in nature[9] and applies only to sexual abusers, extends only to natural persons—not to third persons for their potential indirect or vicarious liability. Thus, the revisions to § 9:2800.9 reflect that only claims against a natural person are imprescriptible.

Act 322's revival provision limits itself further to claims against a "party." The legislature's repeated use of the narrower term "party" (rather than "person") in the revival provision confirms that, even if Plaintiff's claims against Holy Cross were otherwise subject to § 9:2800.9 (they are

---

[9] *See infra,* Section III.B.2.

not), Act 322 does not revive them. The revival provision uses the term "party" three separate times. It never uses the broader term "person," which is present earlier in the statute (in the prospective prescription provisions). Thus, the revival provision instructs: "any ***party*** whose action under R.S. 9.2900.9 was barred by liberative prescription . . . shall be permitted to file an action under 9:2800.9 against a ***party*** whose alleged actions are the subject of R.S. 9:2800.9." (emphasis added). It is evident that the only "party" who can have a claim of being sexually abused is a natural person. Further, this provision states, "It is the intent of the legislature to revive for a period of three years any claim against a ***party***, authorized by R.S. 9:2900.9, that prescribed prior to the effective date of this Act." (emphasis added).

The revival provision's use of the term "party" logically can refer only to a party to the abuse—whether the abused or the abuser. This is consistent with La. R.S. 46:2140,[10] which interchangeably uses the term "party" when referring to the abused or the abuser, and Black's Law Dictionary, for which the primary definition of "party" is: "Someone who takes part in a transaction."[11] Thus, the legislation revives claims by a "party" to the abuse (the victim) against the other "party" to the abuse (the abuser). It cannot affect claims against separate juridical entities that the victim alleges to be indirectly liable.

In sum, there are three independent statutory grounds that confirm Act 322's revival provision does not apply to Plaintiff's claims against Holy Cross: (1) the claims did not prescribe under § 9:2800.9 and thus are not subject to its revival provision; (2) the claims do not allege "sexual abuse of a minor" by Holy Cross under the revised definition; and (3) the revival provision

---

[10] La. R.S. 46:2140 addresses law enforcement officers' duties if they believe abuse has occurred.

[11] Black's Law Dictionary (11th ed. 2019) (party) ("1. Someone who takes part in a transaction <a party to the contract.>").

does not extend to corporate entities that are non-parties to the abuse. In the alternative, however, if the statutory text were somehow read to support revival of Plaintiff's claims against Holy Cross, the Louisiana and United States Constitutions prohibit that result.

## III.    **The revival of Plaintiff's prescribed claims against Holy Cross would be unconstitutional.**

### A.    **The revival of the prescribed claims against Holy Cross would violate due process.**

Relying on the pre-existing French legal tradition, Louisiana law has protected vested rights from retroactive legislation since the earliest years of its Civil Code.

> The principle that laws are to have a prospective and not retroactive effect is a basic principle of most legal systems. Planiol notes that France, from which Louisiana inherited its Civil Code, adopted this principle because: 'There would be no security for private persons if their rights, their fortunes, their personal status, the effects of their acts and of their contracts, could be questioned or modified or suppressed at any moment because the law-maker had changed his mind.' 1 M. Planiol, TREATISE ON THE CIVIL LAW, § 240 (La. St. L. Inst. Trans. 1959).

*Manuel v. Louisiana Sheriff's Risk Mgmt. Fund*, 95-0406 (La. 11/27/95), 664 So.2d 81, 84.

The Due Process Clause of the Louisiana Constitution maintains this protection, including relative to prescriptive periods. "[S]tatutes of limitation, like any other procedural or remedial law, cannot consistently with state and federal constitutions apply retroactively to disturb a person of a pre-existing right." *Lott v. Haley*, 370 So.2d 521, 523–24 (La. 1979) (holding that La. R.S. 9:5628, which imposed a time limit on medical malpractice claims, could not be applied retroactively to divest a plaintiff of a cause of action).

This principle applies with equal force to a defendant's vested right to assert the defense of prescription once a claim has prescribed. As the Supreme Court observed in *Falgout v. Dealers Truck Equip. Co.*, 98-3150 (La. 10/19/99); 748 So.2d 399, 407, "When a party acquires a right, either to sue for a cause of action ***or to defend himself against one***, that right becomes a vested property right and is protected by the due process guarantees." (emphasis added); *see also*

*Elevating Boats, Inc. v. St. Bernard Par.*, 2000-3518 (La. 9/5/01), 795 So.2d 1153, 1164 ("[A]fter the prescriptive period on an obligation has run, an obligor gains the *right* to plead prescription. In such a situation, that *right* to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would 'modify or suppress the effects of a right already acquired.'") (quotation omitted) (emphasis original); *overruled in part on other grounds by Anthony Crane Rental, L.P. v. Fruge*, 2003-0115 (La. 10/21/03), 859 So.2d 631.

In *Hall v. Hall*, 516 So.2d 119, 120 (La. 1987), a case involving facts and arguments strikingly similar to those made in the instant case, the Louisiana Supreme Court expressly rejected the argument that new legislation can revive a prescribed claim for sexual abuse of a minor. The plaintiff in *Hall* filed an action alleging sexual abuse of a minor in the 1970s. As summarized by the Supreme Court:

> The trial court dismissed these counts on the ground they were liberatively prescribed inasmuch as the suit was not filed until 1983, while the last alleged tort was in 1979. . . . The court of appeal reversed, saying that prescription was suspended by Civil Code art. 3469 [effective January 1, 1983] and did not begin to run until Danielle reached the age of majority [on September 22, 1983]."

*Id.* at 120. The Supreme Court reversed, holding that the "**enactment of that article [3469] could not revive the already prescribed action**." *See id.* (emphasis supplied).

Several years later, the Louisiana Supreme Court once again made clear that a plaintiff with an otherwise-prescribed claim for sexual abuse may not rely on potentially retroactive legislation to oppose a defendant's exception of prescription. In *Bouterie v. Crane,* the Court "granted *certiorari* to decide whether prescription was suspended while [the plaintiff] was in the legal custody of the DHHR [a predecessor to the Department of Social Services] by virtue of her minority combined with the adjudication of custody." *Bouterie v. Crane*, 616 So.2d 657, 659 (La. 1993). The Court held that the doctrine of *contra non valentem* suspended prescription and

reversed the judgment granting the exception of prescription. *See id.* The Court expressly explained, however, that the doctrine of *contra non valentem* was necessary to its decision because, while the applicable prescriptive period "was amended in 1992 to extend to three years the liberative prescriptive period against a person for abuse of a minor[,] ***Bouterie cannot benefit from the 1992 amendment because it could not operate retroactively to revive an already prescribed cause of action***." *See id.* at n. 15 (emphasis supplied) (citing *Hall v. Hall,* 516 So.2d 119 (La. 1987)).

Thus, Louisiana Supreme Court jurisprudence confirms that legislation cannot constitutionally revive a prescribed cause of action. Plaintiff may try to circumvent this jurisprudence by arguing that the legislature can overcome the due process prohibition on revival of prescribed claims if the legislature makes its intent to do so clear enough. The Louisiana Supreme Court has repeatedly rejected this same argument.

For example, in *Bourgeois v. A.P. Green Indus., Inc.*, 001-1528 (La. 4/3/01); 783 So.2d 1251, the legislature made clear that it intended a law to apply retroactively. *See id.* at 1258 ("Because we know in this case that the legislature intended retroactive application of Act 989, it would be an exercise in futility to classify the law as either substantive or interpretive."). The Court rejected an argument that this "clear" expression of intent allowed for retroactive application. The Court held: ***"[E]ven where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights***." *Id.* at 1257 (emphasis supplied); *id.* at n.11 ("We do not hold that Act 989 itself is unconstitutional. Rather, we hold that retroactive application of Act 989 unconstitutionally divests plaintiffs of their vested property right in their causes of action which accrued prior to the effective

date of the Act."). In doing so, *Bourgeois* specifically warned against arguments that rely on legislative intent to overcome constitutional guarantees:

> Planiol also cautions against the lawmaker misusing his right of interpretation "in giving the name of 'interpretive law' to laws which contain new provisions." 1 M. PLANIOL, TREATISE ON THE CIVIL LAW, § 251 (La. St. L. Inst. Trans. 1959). *See also St. Paul Fire & Marine*, 609 So.2d at 819 ("Of course, it is a different matter when the legislature actually *amends* previously enacted legislation by laws designated as interpretive. This again may be an improper exercise of power tending to attribute, contrary to constitutional guarantees, retroactive effect to new legislation.") (quoting Yiannopoulos, *Validity of Patents Covering Navigable Waterbottoms—Act 62 of 1912, Price, Carter and All That,* 32 La.L.Rev. 1, 16 (1971)).

*Bourgeois*, 783 So.2d at 1258.

*Bourgeois*'s holding that, regardless of intent, the legislature cannot deprive a party of its vested rights accords with many other Louisiana Supreme Court decisions, including:

- *Church Mut. Ins. Co. v. Dardar*, 2013-2351 (La. 5/7/14), 145 So.3d 271, 279 n.10 & 281 ("[W]here it is determined that the legislature intended retroactive application of a new statute, the inquiry is not truly at an end, and the constitutional analysis must follow. . . . Statutes enacted after the acquisition of [] a vested property right cannot be applied so as to divest a party of his or her vested right . . . because such a retroactive application would contravene due process guarantees.");

- *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So.2d 16 *amended on reh'g* (Sept. 19, 2008) ("When a court can determine the legislature's intent regarding retroactive application of an act, the La. Civ. Code art. 6 inquiry to determine whether the statute was intended to be applied retroactively is at an end. ***However,*** retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligations of contracts or in divestiture of vested rights.") (emphasis added, original emphasis and modifications omitted) (quotation omitted), *amended on reh'g* (Sept. 19, 2008);

- *Burmaster v. Plaquemines Par. Gov't*, 2007-2432 (La. 5/21/08) 982 So.2d 795, 807 (Even if the legislature intends retroactive application of a new law, "retroactive application of new legislation is constitutionally permissible only if it does not result in . . . divestiture of vested rights.") (citing *Bourgeois*, 783 So.2d at 1258);

- *Unwired Telecom Corp. v. Par. of Calcasieu*, 2003-0732 (La. 1/19/05), 903 So.2d 392, 404 ("[E]ven when the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.");

- *Morial v. Smith & Wesson Corp.*, 2000-1132 (La. 4/3/01), 785 So.2d 1, 10 ("[B]ecause the principle has constitutional implications under the Due Process and Contract Clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.");

- *Keith v. U.S. Fid. & Guar. Co.*, 96-2075 (La. 5/9/97), 694 So.2d 180, 183 ("[E]ven where the Legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.");

- *Rousselle v. Plaquemines Par. Sch. Bd.*, 633 So.2d 1235, 1244 (La. 1994) ("However, since application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.");

- *Segura v. Frank*, 630 So.2d 714, 721 (La. 1994) ("Thus, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights");

- *Louisiana Health Serv. & Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990) ("The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him."); and

- *Graham v. Sequoya Corp.*, 478 So.2d 1223, 1226 (La. 1985) ("[A] law will not be applied retroactively if its language evidences a contrary intent ***or*** the retroactivity would operate to disturb vested rights.") (emphasis supplied).

These cases unequivocally confirm that, once a claim has prescribed, and ***regardless of legislative intent***, legislation cannot, under the Louisiana Constitution, strip away a defendant's substantive right to plead prescription no matter how clear the legislature's intent may be to do so. It is important to note that, under the Louisiana Constitution and the clear, unambiguous jurisprudence

of the Louisiana Supreme Court cited above, there is no further inquiry conducted by courts to determine whether legislation can retroactively revive a prescribed claim. Thus, for example, questions that may be relevant in determining whether substantive due process rights have been violated under the federal Constitution—such as whether government action was arbitrary or capricious—simply have no bearing on the analysis.

For the Court's convenient reference, attached as ***Appendix A*** is a non-exhaustive exemplar list of other authorities from those courts and commenters confirming that due process prohibits the revival of a prescribed claim. The most recent such opinion was issued by the Louisiana Fourth Circuit Court of Appeals on November 10, 2021, in the *Jayson Doe* case.[12] In that case, which involved Section A of La. R.S. § 9:2800.9 prior to its amendment by Act 322, the Fourth Circuit held that "Subsection A governing the prescriptive period of La. R.S. 9:2800.9 affects vested rights; therefore it is substantive and cannot apply retroactively."[13] By the same reasoning, Section 2 of Act 322, which purports to revive a claim in the face of Holy Cross's vested right to assert prescription is likewise "substantive and cannot apply retroactively."

Strikingly similar to the plaintiff in *Hall v. Hall*, 516 So.2d 119, Plaintiff (1) alleges sexual abuse that occurred in 1969, at the latest;[14] (2) asserts claims that prescribed by 1970, at the latest, under the then-applicable one-year prescriptive period;[15] and (3) appears to contend that subsequent legislation revived his prescribed claims. But, as established by *Hall* itself, subsequent

---

[12] *See* Ex. A, *Jayson Doe v. Jesuit High School of New Orleans et al.*, 21-0284 (La. App. 4 Cir. 11/10/21); -- So.3d --.

[13] *See* Ex. A, *Jayson Doe*, slip op. at 7.

[14] The alleged abuse in *Hall* occurred until 1979, at the latest.

[15] The claims in *Hall* prescribed by 1980, at the latest.

legislation cannot revive Plaintiff's prescribed claims. *See* 516 So.2d at 120. The jurisprudence

cited above (and in Appendix A) overwhelmingly confirms that, as a matter of constitutional law,

even the clearest legislative intent cannot overcome a defendant's vested right to plead

prescription.

    **B.**    **The revival of the prescribed claims against Holy Cross also would violate the constitutional prohibitions against bills of attainder.**

    The United States Constitution prohibits state legislatures from enacting bills of attainder.

U.S. Const. art. I § 10 ("No State shall . . . pass any Bill of Attainder . . . .").[16] The Bill of Attainder

Clause originated from the Founders' concerns over the English parliamentary practice of

retroactively "sentencing to death one or more specific persons" for prior acts of alleged treason.

*United States v. Brown*, 381 U.S. 437, 441–42 (1965). But despite this original root of the Clause,

the Supreme Court's "jurisprudence has uniformly supported a broader sweep for the

constitutional prohibition." *SBC Comm'ns, Inc. v. F.C.C.*, 154 F.3d 226, 235-36 (5th Cir. 1998).

    A statute violates the Bill of Attainder Clause when it (1) specifies "the affected persons"

and (2) imposes a punishment or deprivation on the specified persons without judicial trial.

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 847 (1984); *see also Brown*,

381 U.S. at 449 n.23 ("The vice of attainder is that the legislature has decided for itself that certain

persons possess certain characteristics and are therefore deserving of sanction."). "The deprivation

---

[16] The Louisiana Constitution contains a "virtually identical" and "substantively equivalent" prohibition. *Segura v. Frank*, 630 So.2d 714, 728 (La. 1994); *see also* La. Const. art. 1 § 23 ("No bill of attainder . . . shall be enacted."). U.S. Const. art. I § 9 similarly prohibits Congress from enacting federal bills of attainder. Thus, this memorandum's discussion of the federal Bill of Attainder Clause extends to Louisiana's state constitutional analogue.

of any rights, civil or political, previously enjoyed, may be punishment" for attainder purposes. *Cummings v. Missouri*, 71 U.S. 277, 320 (1866).[17]

Section 2 of Act 322 is a unilateral legislative determination that specified persons possess certain characteristics and are therefore deserving of sanction. Without judicial trial, Section 2 deprives Holy Cross of its property right to a perfected prescription defense vested under both state and federal law. That deprivation amounts to unconstitutional legislative punishment.

> 1. ***Section 2 singles out a specifically defined class of persons based on alleged past and irreversible conduct.***

A statute possesses the requisite specificity to violate the Bill of Attainder Clause where it applies to a closed category of persons as described by past conduct:

> The singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons.

*Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961).[18]

Whether persons can escape the legislatively-targeted class by correcting their past conduct is critical to the specificity inquiry. In *Selective Service System v. Minnesota Public Interest Research Group*, the challenged statute denied federal financial aid to students who failed to register for the military draft. 468 U.S. at 844. The Court rejected that the statute was sufficiently specific, despite targeting persons based on past conduct, because the law "allowed all

---

[17] *See also Cummings*, 71 U.S. at 321–22 (noting that common examples of attainder in colonial-era France included "deprivation or suspension of civil rights, or of some of them, and among these of the right of voting, of eligibility to office, of taking part in family councils, of being guardian or trustee, of bearing arms, and of teaching or being employed in a school or seminary of learning").

[18] *See also Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994) ("The prohibitions on 'Bills of Attainder' . . . prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct."); *id.* ("[R]etroactive statutes raise particular concerns.").

nonregistrants to qualify for . . . aid simply by registering late." *Id.* at 855. In this regard, the Court distinguished the unconstitutional bills of attainder it found in *Cummings v. Missouri*, 71 U.S. 277 (1866) and *Ex parte Garland*, 71 U.S. 333 (1866)—both of which dealt with laws penalizing persons who supported the Confederacy during the Civil War:

> In both *Cummings* and *Garland*, the persons in the group disqualified were defined entirely by irreversible acts committed by them. . . . *Cummings* and *Garland* dealt with absolute barriers to entry into certain professions . . .; no one who had served the Confederacy could possibly comply, for his status was irreversible. By contrast, [the student aid statute]'s requirements, far from irreversible, can be met readily by either timely or late filing. 'Far from attaching to . . . past and ineradicable actions,' ineligibility for . . . benefits 'is made to turn upon continuingly contemporaneous fact' which a student who wants public assistance can correct.

*Selective Serv. Sys.*, 468 U.S. at 848–51 (quoting *Communist Party of the U.S.*, 367 U.S. at 87).

Section 2 of Act 322, however, exclusively designates particular persons based on irreversible past conduct. By its plain terms, the statute revives claims only against those "parties whose alleged actions are the subject of § 9:2800.9 . . . that prescribed prior to the effective date of th[e] Act." That class of persons is closed and definite, not fluid or subject to any ongoing or future modification. And given the obvious irrevocability of the actions outlined in § 9:2800.9—"sexual abuse of a minor" and "physical abuse of a minor"—persons made subject to the revival provision cannot "correct" their alleged conduct to escape the class. Thus, if Section 2 applies to Holy Cross, it is inconsequential that the provision's text does not expressly target Holy Cross by name.[19] The Bill of Attainder Clause prohibits legislatures from singling out classes of persons as Section 2 plainly does here.

---

[19] "It was not uncommon for English acts of attainder to inflict their deprivations upon relatively large groups of people, sometimes by description rather than na[m]e." *Brown*, 381 U.S. at 460–61 (rejecting that a statute must explicitly name parties singled out for punishment to be sufficiently specific).

### 2.    *Section 2 legislatively punishes its targets without judicial trial.*

The U.S. Supreme Court has outlined a three-factor test to determine whether a statute imposes punishment prohibited by the Bill of Attainder Clause: (1) a historical test as to whether a "statute falls within the historical meaning of legislative punishment;" (2) a functional test as to whether a statute "reasonably can be said to further nonpunitive legislative purposes;" and (3) a motivational test as to "whether the legislative record evinces a [legislative] intent to punish." *Selective Serv. Sys.*, 468 U.S. at 851 (quotation omitted). Federal appellate courts have held that a statute need not be found to be punitive under all three tests to be a bill of attainder; instead, each factor is "an independent—though not necessarily decisive—indicator of punitiveness." *Foretich v. United States*, 351 F.3d 1198, 1218 (D.C. Cir. 2003) (citations omitted). Section 2 of Act 322 is punitive under all three.

> ### a)    *Section 2 is analogous to the historical punishment of property confiscation because it deprives persons of a vested property right.*

The first factor confirms that Section 2 of Act 322 is "immediately constitutionally suspect" because it imposes traditional punishment. *Nixon*, 433 US. at 473. Although English bills of attainder were those singling out specific persons for execution, Parliament also commonly imposed bills of "pains and penalties" which "consisted of a wide array of punishments: commonly included were imprisonment, banishment, and the ***punitive confiscation of property by the sovereign***." *Id.* at 474 (emphasis supplied).[20] "Within the meaning of the Constitution, bills of attainder include bills of pains and penalties." *Cummings*, 71 U.S. at 323.

Section 2 is directly analogous to historical bills of pains and penalties confiscating a person's property. Once the prescriptive period ran on Plaintiff's claims in 1970, at the latest, such

---

[20] *See also Nixon*, 433 U.S. at 474 n.38 ("Following the Revolutionary War, States often seized the property of alleged Tory sympathizers.").

a property right became vested in Holy Cross under Louisiana constitutional law. *See Falgout v. Dealers Truck Equip. Co.*, 748 So.2d 399, 407 (La. 1999) ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right . . . ."). Section 2, if appliable to Plaintiff's claims, would deprive Holy Cross of a vested property right in a perfected prescription defense without judicial trial.

The fact that the property right at issue here (*i.e.*, the vested right in the defense of prescription) is intangible does not affect this analysis. The U.S. Supreme Court has confirmed that punishment "embrac[es] deprivation or suspension of political or civil rights." *Cummings*, 71 U.S. at 322; *see also Louisiana Health Serv. & Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990) ("The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him."). Indeed, the deprivation of intangible rights is as serious, and, in some instances, more so, than the deprivation of mere tangible property. *See id.* at 320 ("Disqualification from the pursuits of a lawful avocation, or from positions of trust, or from the privilege of appearing in the courts, or acting as an executor, administrator, or guardian, may also, and often has been, imposed as punishment."); *Foretich*, 351 F.3d at 1220 (holding that "the opprobrium of being branded a criminal child abuser . . . may be of even greater magnitude than many of [the burdens] at issue in the historical cases [of attainder]," such as depriving some of their "right to hold office in a labor union").

"A bill of attainder, . . . before the adoption of the Constitution, was an act of sovereign power . . . by which a man [was] punished by deprivation of his vested rights." *United States v. Lovett*, 328 U.S. 303, 322 (1946) (Frankfurter, J., concurring) (quotation omitted). The Clause "was intended not as a narrow, technical (and therefore soon to be outmoded) prohibition." *Brown*,

381 U.S. at 442. Rather, "[w]hile history . . . provides some guidelines, . . . the proper scope of the Bill of Attainder Clause, and its relevance to contemporary problems, must ultimately be sought by attempting to discern the reasons for its inclusion in the Constitution, and the evils it was designed to eliminate." *Id.* The revival provision's unilateral deprivation of Holy Cross's vested property rights employs the same evils as other mechanisms of historical punishment.[21] *See Lovett*, 328 U.S. at 317 ("Those who wrote our Constitution well knew the danger inherent in special legislative acts which take away the . . . property of particular named persons, because the legislature thinks them guilty of conduct which deserves punishment."). Section 2, therefore, satisfies the historical punishment factor and, thus, is "immediately suspect" under the Bill of Attainder Clause. *See Nixon*, 433 U.S. at 473.

> b)    *Section 2's function is wholly retrospective and retributive rather than regulatory of ongoing or future conduct.*

Even if the revival provision "does not inflict punishment in its historical sense" (as shown above, it does), the attainder inquiry does not end. *Selective Serv. Sys.*, 468 U.S. at 853. Supreme Court precedent "has never precluded the possibility that new burdens and deprivations might be

---

[21] It requires mention that depriving a defendant of a prescription defense to alleged abuse by another that occurred over half a century ago is prejudicial to any trial on the merits. *See Stogner*, 539 U.S. at 631 ("[Denying] the existence of significant reliance interests, the dissent ignores the potentially lengthy period of time (in this case, 22 years) during which the accused lacked notice that he might be prosecuted and during which he was unaware, for example, of any need to preserve evidence of innocence. Memories fade, and witnesses can die or disappear. Such problems can plague child abuse cases, where recollection after so many years may be uncertain, and 'recovered' memories faulty . . . ."). A trial on the merits can, of course, result in the deprivation of tangible property. *See also Cummings*, 71 U.S. at 325 ("[The Clause] intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment, *under any form, however disguised*. If the inhibition can be evaded by the form of the enactment, its insertion in the [Constitution's] fundamental law was a vain and futile proceeding." (emphasis added).

legislatively fashioned that are inconsistent with the bill of attainder guarantee." *Nixon*, 433 U.S. at 475.

Under the "functional" test, a statute is unconstitutionally punitive where it cannot reasonably "be said to further nonpunitive purposes" when considered in light "of the type and severity of [the] burdens" it imposes. *Id.* at 475–76. The Supreme Court has explained "[i]n determining whether punitive or nonpunitive objectives underlie a law, . . . one who complains of being attained must establish that the legislature's action [was] not merely the legitimate regulation of conduct." *Id.* at 476 n.40. Instead, an "indispensible element of a bill of attainder is its retrospective focus." *Consol. Edison Co. of New York v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2002)*.*

The revival provision, by its own terms, does not regulate conduct prophylactically but rather imposes a "retrospective focus" on past conduct. *See id.* Section 2 is wholly retributive against persons (including those who are deceased) alleged to have engaged in past and irreversible child abuse-related acts. Even if promoting retributive justice for victims of child abuse is a rational legislative aim, the functional test of attainder "demands purposes that are not merely reasonable but nonpunitive. Punitive purposes, however rational, don't count." *BellSouth Corp. v. F.C.C.*, 144 F.3d 58, 67 (D.C. Cir. 1998). Because Section 2's only mechanism of promoting justice for child abuse victims is to legislatively deprive targeted defendants of a vested right in a perfected prescription defense, it cannot reasonably be said to further nonpunitive goals. *See Foretich*, 351 at 1223 (reasoning that legislative deprivation of a father's visitation rights due to unproven child abuse allegations was functionally punitive because it "permanently associated [the father] with

21

criminal acts of child sexual abuse" and thus "inflict[ed] significant and costly injury to [the father's] reputation").[22]

>   c)  *The legislative motivation behind Section 2 was to promote retributive justice for alleged child abuse-related acts.*

The third attainder inquiry is "strictly a motivational one" and considers whether the legislative history demonstrates a punitive intent behind the statute. *Nixon*, 433 U.S. at 478. Section 2 was added to Act 322 by amendment during discussion on the Louisiana Senate floor, after the bill had been passed by the Louisiana House without a revival provision.[23]

The legislative history makes it readily apparent that the express intent behind adding Section 2 was to subject persons alleged to have engaged in child abuse-related acts to retributive justice.[24] Senator Karen Carter Peterson, for example, echoed retributive sentiments when speaking in support of adopting Section 2:

>   [T]his involves children and they are vulnerable and—but for this Amendment, they wouldn't have the ability . . . *to go back and have people pay for their actions*.[25]

Senator Peterson later stated:

---

[22] The D.C. Circuit recognized that such branding and reputational harms were inflicted despite the fact that the father was never "the subject[] of any criminal indictment or arrest warrant in connection with [the] allegations" of abuse. *Foretich*, 351 F.3d at 1206. Given increasing media attention around Catholic institutions in the abuse context, Section 2's revival provision (assuming that it even applies to Holy Cross) functions so as to expose Holy Cross to identical branding and reputational harms here based solely on its former employment of the alleged perpetrators.

[23] *See* Amendments proposed by Senator Henry to Reengrossed House Bill No. 492 by Representative Hughes, http://www.legis.la.gov/legis/ViewDocument.aspx?d=1232081 (last visited July 22, 2021).

[24] *See Foretich*, 351 F.3d at 1225

[25] Ex. B, Tr. of June 7, 2021 HB 492 Final Passage at 4:13-17 (emphasis added).

> There have been so many children in our state that have been abused, and the fact that this Amendment is being brought, *it is going to bring justice to children* . . . .[26]

Representative Jason Hughes, the primary sponsor of HB 492, expressed similar public retributive sentiments about the legislation generally:

> House Bill 492 will never cure the pain of victims; however, *it gives them a chance to achieve justice* . . . . This bill will send a powerful message to every vicious predator that child sexual abuse is unconscionable and *will not be tolerated or condoned* in Louisiana.[27]

But the mechanism to "achieve justice" employed by Section 2 is to strip away a party's vested right to defend itself by a legislative decree in favor of the alleged victim in each instance, and without hearing. Indeed, the legislative record here is nearly identical to the record found to demonstrate a punitive motive in *Foretich v. United States*—where the statute at issue was also enacted in a child abuse-related context. *See* 351 F.3d at 1225–26 (holding that statute "amounted to precisely that which the Bill of Attainder Clause was designed to prevent" where legislators stated that a statute's purpose was to "correct an injustice," that it "was necessary to bring 'justice and satisfaction'" to a victim, and that it would "bring[] justice" by "deal[ing] with the inadequacies of the court system").

Louisiana state legislators also repeatedly branded those persons targeted by Act 322 as guilty and blameworthy. In *United States v. Lovett*, 328 U.S. at 313, the Supreme Court held that a statute's punitive intent was shown by representatives describing the targeted persons as

---

[26] *Id.* at 5:13-15 (emphasis added).

[27] Ramon Antonio Vargas, *Louisiana Legislature passes bill removing filing deadlines for child sex abuse lawsuits*, NOLA (June 10, 2021), https://www.nola.com/news/article_22d5f9f4-ca2f-11eb-a869-73ac64e725c7.html (quoting Rep. Hughes) (emphasis added); *see also* Ex. C, Tr. of May 3, 2021 H.B. 492 Hearing at 6:19-21 (According to Rep. Hughes, "[b]y the time most victims were ready to come forward, the courthouse doors were locked, *shutting victims out of justice*." (emphasis added)).

"irresponsible, unrepresentative, crackpot, radical bureaucrats" during legislative debate. *Id.* at 308. Similarly here, Louisiana legislators regularly described persons targeted by Act 322 in guilt-connoting terminology, such as being guilty "predators," "perpetrators," or "monsters."[28]

That the motivation behind Section 2's purported revival of prescribed claims was punitive and retributive is bolstered by the fact that the legislature had considered and rejected less burdensome alternatives.[29] The legislature put aside the less-burdensome original version of Act 322, which contained no express retroactivity provision that would have affected already-prescribed claims such as against Holy Cross.

The motivational inquiry relates back to a "major concern" underlying the Bill of Attainder Clause: "the fear that the legislature, in seeking to pander to an inflamed popular constituency, will find it expedient openly to assume the mantle of judge or, worse still, lynch mob." *Nixon*, 433 U.S. at 480; *see also Landgraf*, 511 U.S. at 266 ("The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals."). The legislature was no doubt aware of recently growing political pressure to promote retribution against an unpopular constituency of

---

[28] *See* Ex. C, Tr. of May 3, 2021 HB 492 Hearing at 5:19-20 (Rep. Hughes speaking to how HB 492 is aimed at "perpetrators of child sex abuse"); *id.* at 6:25 (Rep. Hughes speaking to how HB 492 will help "identif[y] hidden child predators"); *id.* at 13:9-12 (Rep. Landry describing the Catholic Church as having "so many of its members guilty of this horrible crime"); *id.* at 15:8-9 (Rep. Johnson stating that "there should be no out for anyone that does such a heinous—monsters that do this to children").

[29] *See Nixon*, 433 U.S. at 482 ("In determining whether a legislature sought to inflict punishment on an individual, it is often useful to inquire into the existence of less burdensome alternatives by which that legislature (here Congress) could have achieved its legitimate nonpunitive objectives.").

persons who allegedly had engaged in child abuse-related acts when considering Act 322.[30] Given this growing pressure and without a single sustained objection to Section 2 of Act 322, the legislature unanimously found it expedient to define a particular class of persons and impose punishment.[31] Thus, Section 2 of Act 322 meets all three tests, confirming that the legislation, if applicable to Holy Cross, is an impermissible Bill of Attainder.

## **CONCLUSION**

Plaintiff alleges abuse that occurred in the late 1960s. Under La. Civ. Code art. 3492, his claims prescribed by the end of 1970, at the latest. The earliest version of § 9:2800.9 was not enacted until 1993. Neither the original enactment of § 9:2800.9 nor its 2021 revision to add a revival period for claims that previously prescribed under § 9:2800.9 had any effect on Plaintiff's claims. In the alternative, even if Act 322 could be interpreted as intending to revive Plaintiff's

---

[30] Beyond the recently growing public scrutiny for alleged child abuse-related acts, especially against Catholic institutions, Rep. Hughes demonstrated direct awareness of political pressure for limitations reform as to child abuse claims in the House committee hearing on HB 492:

> [T]here is a vibrant national and global movement for statute of limitation reform with respect to victims of child sexual abuse. . . . In the United States, since 2002, uh, 40 jurisdictions extended or eliminated their civil statute of limitations for child sexual abuse, and 21 jurisdictions revived expired claims. Uh, I think it's high time for Louisiana to join this movement.

Ex. C, Tr. of May 3, 2021 HB 492 Hearing at 7:5-21.

[31] Legislative unanimity is "perhaps most fundamental[]" when deciphering legislative motivation. *See SBC*, 154 F.3d at 244 (rejecting that statute was punitive because it was "part of a larger quid pro quo" and "a hard fought-compromise"). But Section 2 was added to HB 492 without a single sustained objection in the Louisiana Senate. *See* Ex. B, Tr. of June 7, 2021 H.B. 492 Final Passage at 6:13-7:2. Senator Peacock at first objected to adding Section 2, but his objection was withdrawn after seemingly being persuaded by other senators that HB 492 would have been retroactively applied *even without Section 2. See id.* at 3:6-9 (statements of Senator Morris); *id.* at 5:24-6:10 (statements of Senator Luneau). HB 492, having already been approved by the House without Section 2, was then approved by 99-0 vote in the Senate. The House and Senate both approved the final version unanimously.

claims (and it cannot), the state and federal constitutions prohibit this result. Holy Cross respectfully requests that the Court dismiss Plaintiff's claims as prescribed.

Dated: New Orleans, Louisiana
February 2, 2022

Respectfully submitted,

_/s/ Benjamin O. Flaxenburg_
William P. Gibbens, 27225
Benjamin O. Flaxenburg, 37682
SCHONEKAS, EVANS, MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone:  (504) 680-6050
Facsimile:  (504) 680-6051
billy@semmlaw.com
benjamin@semmlaw.com

Anthony D. Dougherty (*pro hac vice motion forthcoming*)
Linda S. Roth  (*pro hac vice motion forthcoming*)
Trevor A. Prince, Jr. (*pro hac vice motion forthcoming*)
ARCHER & GREINER, P.C.
1211 Avenue of the Americas, Suite 2750
New York, New York 10036
Telephone:  (212) 682-4940
adougherty@archerlaw.com
lroth@archerlaw.com
tprince@archerlaw.com

*Counsel for Congregation of Holy Cross, Moreau Province, Inc. and Holy Cross College, Inc. i/s/h/a Congregation of Holy Cross Southern Province, Inc. and Holy Cross College, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 2, 2022, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the CM/ECF system.

*/s/ Benjamin O. Flaxenburg*
BENJAMIN O. FLAXENBURG

## Appendix A

**Additional State Cases**

- *Chumley v. Magee,* 44,860 (La. App. 2 Cir. 2/17/10); 33 So.3d 345, 351 ("[P]rescriptive statutes cannot, consistently with state and federal constitutions, apply retroactively to disturb a person's preexisting right. When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees.");

- *Lambert v. Roussel*, 2007-1109 (La. App. 1 Cir. 5/2/08), 991 So.2d 8, 13 ("Only those prescriptive periods that were running could be affected by the change. The legislature is without the authority to revive a prescribed claim."), *writ denied,* 2008-1193 (La. 9/19/08), 992 So.2d 933;

- *Mitchell v. Limoges,* 05- 832 (La. App. 3 Cir. 3/1/06); 923 So.2d 906, 910 ("[T]he new prescriptive period supplied by La. Civ. Code art. 3469 cannot revive an action that had already prescribed under La. Civ. Code art. 3536.");

- *Johnson v. The Roman Cath. Church Archdiocese of New Orleans*, 2002-0429 (La. App. 1 Cir. 2/14/03), 844 So.2d 65, 69 ("When law modifies duration of a prescription, either to lengthen it or shorten it, prescriptions already accrued are not disturbed by it, but those which are running are affected by the change. The Legislature is without the authority to revive a prescribed claim."), *writ denied sub nom. Johnson v. Roman Cath. Church for Archdiocese of New Orleans*, 2003-0730 (La. 5/9/03), 843 So.2d 401, and *writ denied sub nom. Johnson v. The Roman Cath. Church*, 2003-0778 (La. 5/9/03), 843 So.2d 406;

- *Doe v. Jones*, 2002-2581 (La. App. 1 Cir. 9/26/03), 857 So.2d 555, 561 (Subsequent "legislation could not operate to retroactively revive the cause of action and deprive the defendant of a vested right.");

- *State v. Lee ,* 31,859 (La. App. 2 Cir. 2/24/99); 728 So.2d 1042, 1044 ("[A] legislative act cannot revive a cause of action already barred by liberative prescription prior to the effective date of the statute.");

- *G.B.F. v. Keys*, 29,006 (La. App. 2 Cir. 1/22/97), 687 So.2d 632, 635 ("A statute enacted after the expiration of the plaintiff's cause of action by prescription cannot revive the already prescribed action."), *writ denied,* 97-0385 (La. 3/21/97), 691 So.2d 94;

- *Harrison v. Gore,* 27,254 (La. App. 2 Cir. 8/23/95); 660 So.2d 563, 571 n. 3 ("[A] statute enacted after the expiration of the plaintiff's cause of action by prescription cannot revive the already-prescribed action . . .");

- *Cameron Parish School Bd. v. Acands, Inc.,* 94-545 (La . App. 3 Cir. 11/2/94); 646 So.2d 976, 979 ("[W]e recognize that a defendant's right to assert the peremptory exception of prescription is a vested right.");

- *Gay v.* C & D *of Shreveport,* 25,319 (La. App. 2 Cir. 10/26/94); 645 So.2d 280, 282 ("Retroactive application of a prescriptive provision is foreclosed when the cause of action has prescribed before the provision takes effect.");

- *Bishop v. Simonton,* 24199 (La. App. 2 Cir. 2/24/93); 615 So.2d 8, 12 ("More directly

stated, a legislative act cannot revive a cause of action already barred by liberative prescription prior to the effective date of that act.");

- *Eubanks v. Bayou D'Arbonne Lake Watershed Dist.*, 32,334 (La. App. 2 Cir. 9/22/99); 724 So.2d 113, 117 n. 1 ("[T]he amended version shall not apply retroactively to deprive a party of vested prescriptive rights.");

- *Wilson v. Dep't of Transp. & Dev.*, 98-1142 (La. App. 4 Cir. 4/14/99); 737 So.2d 866, 871 ("[T]he amendment to La. R.S. 9:5624, changing the point of accrual of the two-year prescriptive period, from the time when damage was 'sustained' to 'completion' and acceptance of public works, does not apply retroactively to actions where prescription has already run under the old law at the time the suit was filed, so that the effect of prescription had already vested.");

- *Smalls v. Avoyelles Par. Police Jury*, 90-400 (La. App. 3 Cir. 11/13/91); 589 So.2d 1132, 1134, n. 1 ("[A]n amended statute cannot operate retroactively to revive a prescribed cause of action.");

- *Lyman v. Town of Sunset,* 89-464 (La. App. 3 Cir. 10/3/90); 567 So.2d 1171, 1174 ("Prescription had already run on the plaintiffs' cause of action under the old law at the time suit was filed. As a result, the effect of prescription had 'vested' well before the amendment came into effect.");

- *LeBlanc v. City of Lafayette,* 88-1188 (La. App. 3 Cir. 3/14/90); 558 So.2d 259, 262 ("The amended statute cannot revive plaintiffs' prescribed cause of action . . . ."); and

- *Ayo v. Control Insulation Corp.,* 3562 (La. App. 4 Cir. 10/11/85); 477 So.2d 1258, 1260-61 ("The 1980 amendment did not revive Mrs. Ayo's right to claim compensation benefits, and did not destroy defendants' right, which had accrued, to raise the prescriptive "bar" to plaintiff's claim.").

## Additional Federal Cases

- *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 192-93 (5th Cir. 2010) ("[T]he Louisiana Supreme Court has explicitly declined to retroactively apply a prescription statute to revive an already prescribed cause of action. This is because while a defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the defendant may plead the exception of prescription to defeat the plaintiff's claim. Once the defendant's right to plead prescription has vested, any retroactive application of an extended prescriptive period would improperly disturb that vested right, and is therefore impermissible.");

- *Hulin v. Fibreboard Corp.*, 178 F.3d 316, 323 (5th Cir. 1999) ("In Louisiana, the principles of . . . extinguishment of rights or obligations by prescription limit the retrospective effect of retroactive legislation.");

- *Jackson v. Am. Bankers Ins. Co.,* 2006 WL 8456128, at *2 (E.D. La. 9/12/06) ("The Legislature is without the authority to revive a prescribed claim.");

- *Drillias v. Caskey*, 2004 WL 856649, at *4 (E.D. La. 4/19/04) ("The enactment of a new prescriptive statute cannot revive a cause of action that has already prescribed.");

- *Orleans Parish School Bd. v. US. Gypsum Co.,* 892 F. Supp. 794 (E.D. La. 6/5/95) ("The due process clause of the Louisiana constitution prohibits the revival of a prescribed cause of action."); and

**Additional Secondary Authority**

- Lamonica & Jones, 20 La. Civ. L. Treatise, Legislative Law and Procedure § 6:4 (2020 ed.) ("[L]egislative expressions of intent for retroactive application of an act, regardless of how worded, cannot be given effect when to do so would violate constitutional protections . . . . Although free to express intent regarding retroactive or prospective application, the power of the legislature to make law retroactive is limited by constitutional protections, including the due process, supremacy and contract clauses of the U.S. and Louisiana constitutions. Even with express legislative intent for retroactive application, such application is prohibited where it would impermissibly impair contracts or disturb vested rights.").