## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

JOHN LOUSTEAU           \*     **CIVIL ACTION**
      *Plaintiff*            \*
                              \*     **NO. 2021-1457**
**VERSUS**                   \*
                              \*     **JUDGE:**
                              \*     **JAY C. ZAINEY**
**CONGREGATION OF HOLY CROSS**    \*
**SOUTHERN PROVINCE, INC.**        \*
      and                      \*     **MAGISTRATE:**
**HOLY CROSS COLLEGE, INC.**       \*     **KAREN WELLS ROBY**
      *Defendants*           \*

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>

**MAY IT PLEASE THE COURT:**

## I.      INTRODUCTION

Plaintiff, John Lousteau respectfully submits this memorandum in response to the motion to dismiss brought by Defendants, Congregation of Holy Cross, Moreau Province, Inc. i/s/h/a Congregation of Holy Cross Southern Province, Inc. and Holy Cross College Inc., (together "Holy Cross" or "Defendants").

This Motion to Dismiss should be denied because Defendant has not met their burden of proof with respect to any of their proposed reasons for dismissal for the reasons discussed more fully below.

## II.     DEFENDANTS BURDEN OF PROOF

Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription. *State v. Lee*, 31,859 (La. App. 2 Cir. 2/24/99), 728 So. 2d 1042, 1044. As will be discussed further below, although the sexual abuse occurred many years ago, Act 322 revived all

1

previously prescribed child sexual abuse claims. Therefore the Complaint has made a prima facie showing that it was timely filed, and the Defendants have the burden to establish prescription.

## III.    FEDERAL JURISDICTION OVER DEFENDANTS' CONSTITUTIONALITY ARGUMENTS

### A.    THE CONSTITUTIONAL CHALLENGES ARE PREMATURE BECAUSE DEFENDANT FAILED TO COMPLY WITH FRCP 5.1

Defendants constitutionality arguments are premature and should not be heard because Defendants failed to comply with the requirements under Federal Rule of Civil Procedure 5.1 which demands that when a party "files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute" that party "must promptly: (1) file a notice of constitutional question stating the question and identifying the paper that raises it" and "(2) serve the notice and paper on the Attorney General of the United States if a federal statute is questioned–or on the state attorney general if a state statute is questioned." It also states "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." *Id*. "Unless the court sets a later time, the attorney general may intervene within 60 days after the notice is filed or after the court certifies the challenge, whichever is earlier." *Id*. "Before the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional." *Id*. Upon information and belief, the Attorney General has not been notified of this challenge.

Therefore, unless the Court intends to reject all of the Defendants' constitutional challenges, it would be premature to hear them until the Defendants have provided notice of these challenges to the Louisiana Attorney General as they are required to do. The Louisiana State Attorney General has recently filed Memorandums in support of the constitutionality of Act 322 in other cases. *See Exhibit "1"*.

**B. THE PULLMAN ABSTENTION DOCTRINE MAY COUNSEL AGAINST THIS COURT RULING ON DEFENDANTS' CONSTITUTIONALITY CHALLENGES.**

The Pullman Abstention Doctrine suggests that the federal courts should not adjudicate the constitutionality of state enactments if they are open to interpretation until the state courts have been afforded a reasonable opportunity to rule on them. *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941). A federal court should generally abstain from exercising jurisdiction in a matter when an unsettled area of state law has an effect on the outcome of a federal constitutional claim or would render a decision on the federal issue unnecessary. *Id* at 643; *see, e.g., Askew v. Hargrave*, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971) (explaining that when the outcome of a case in state court could remove the need to decide a federal issue a federal court should stay the proceeding until the state court has rendered judgment). Although "abstention [i]s applicable only in narrowly limited special circumstances," the doctrine should be applied when "[a] state court decision ... could conceivably avoid any decision [on the federal question] and would avoid any possible irritant in the federal-state relationship." *Reetz v. Bozanich*, 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (internal quotation marks and citation omitted); *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir.1993) (citation omitted) ("Pullman abstention ... is addressed to the inappropriateness of federal court resolution of difficult or unsettled questions of state law and the undesirability of reaching constitutional questions that might be mooted by the application of state law.").

## IV. BACKGROUND ON THE PASSAGE OF ACT 322

**A. ACT 322 WAS INTENDED TO EXPAND ACCESS TO JUSTICE FOR SURVIVORS AND PREVENT FUTURE SEXUAL EXPLOITATION OF CHILDREN.**

Louisiana enacted Act 322's in June 2021. Its expanding purpose was to expand access to justice for all victims of childhood sexual abuse (hereinafter, "Survivors") and to prevent future incidences of childhood sexual abuse. The bill received universal bipartisan praise through the Legislature. It was passed <u>unanimously</u>

by a legislature composed of 95 Republicans and 47 Democrats.

From the beginning, it was crystal clear that the Legislature intended for Act 322 to expand – not limit – access to justice for Survivors. The bill's main sponsor, Representative Jason Hughes, introduced the bill with a compelling factual recitation:

> [T]here is a worldwide epidemic of child sex abuse with at least 1 in 5 girls and 1 in 13 boys sexually assaulted before they turn 18. Uh. Child sexual abuse is a social issue that occurs in all social groups and institutions. It occurs in families, religious groups, youth serving organizations, athletic institutions, etc….The trauma stemming from childhood sexual abuse is complex and very individualized, and it impacts victims throughout their lifetimes. There is an overwhelming body of science exposing the ways in which the trauma of childhood sexual abuse during childhood impacts memory formation and the repression of memories. It has settled at PTSD, memory, deficits, and complete disassociation are common coping mechanisms for child victims. Trauma is only one of the barriers preventing children from disclosing abuse. Among other barriers, children often lack the knowledge needed to recognize child sexual abuse. They lack the ability to articulate that they have been abused. They don't have an adult they can disclose their abuse to, don't have opportunities to disclose the abuse, and aren't believed when they actually come forward to disclose. <u>Studies suggest many victims, as much as 33% never disclose their abuse to anyone.</u> The disclosure of child sexual abuse is a process and not a discreet event in which a victim comes to terms with their abuse. Often this happens in the context of therapy. Sometimes it is triggered many years after the abuse by an event the victim associates with the abuse. Other times it happens gradually and over time as the victim recovers in their memory. In fact, <u>the average age of disclosure of child sexual abuse in the study of 1,000 victims was 52 years old; yet until recently, many states blocked criminal charges and civil lawsuits well before the age of 51.</u> By the time most victims were ready to come forward, the courthouse doors were locked, shutting victims out of justice. Statute of limitations are um, judicial housekeeping rules as we know. Uh, <u>there are three compelling public purposes served by child sex abuse statute of limitation reforms. Number one, statute of limitation reform identifies hidden child predators that allow the abuse to the public so children will not be abused in the future; two, it shifts the cause of the abuse from the victims and society to those that actually caused it; and three, it educates the public about the prevalence and harm from child sexual abuse to prevent future abuse.</u>

*Rep. Jason Hughes, May 3, 2021, Hearing at the House of Representatives, Bill 492*, at 5:11-7:4 *(emphasis added)*, attached as *Exhibit "2"*.

**B.** **ACT 322 CONSISTS OF TWO COMPONENTS: AMENDMENTS TO THE TEXT OF SECTION 2800.9 AND THE PROVISION OF A LOOKBACK WINDOW.**

**i.** **AMENDMENTS TO SECTION 2800.9**

As the bill made its way through committee and both sides of the legislature, it received such strong bipartisan support that it was repeatedly amended in order even further expanded access to justice for Survivors. The final version of Act 322 consisted of two components, both of which were intended to further the Legislature's goal. The first component made substantive changes to the text of La. Rev. Stat. 9:2800.9 (hereinafter "Section 2800.9"). Previously, Section 2800.9 provided that Survivors had up until they turned 28 years old to file a lawsuit for childhood sexual abuse. Act 322 removed that language and replaced it with the following: "An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring does not prescribe." La. Rev. Stat. § 9:2800.9 *(2021 amendment)*. The significance of this change cannot be overstated. It is almost unheard of for a civil tort to be imprescriptible in Louisiana. Survivors heard the message loud and clear that the Louisiana Legislature intends to fulfil its duty to protect children from predators and any institutions that enable and protect predators. With this amendment, the Legislature acknowledged that child sexual abuse is extraordinarily harmful, causing permanent damage to Survivors, their families, and the entire Louisiana community.

**ii.** **THE LOOKBACK WINDOW**

In its second component, Act 322 included a clause (hereinafter the "Lookback Window") which revived for a limited period of 3 years all causes of action related to childhood sexual abuse which had previously prescribed at any time prior to the passage of Act 322. The Lookback Window reads: "It is the

intent of the legislature to revive for a period of three years any claim against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act." La. Rev. Stat. § 9:2800.9 *(2021 amendment) (emphasis added)*. This reflects the Legislature's acknowledgement that prior prescriptive statutes that applied to childhood sexual abuse were manifestly unjust and inadequate. It was a declaration that Survivors deserve their day in court regardless of how long ago the abuse occurred.

**C.     ACT 322 WAS NOT PASSED IN A VACUUM: IT IS PART OF A NATIONAL TREND TO RIGHT THE HISTORIC DAMAGE CAUSED BY INADEQUATE PRESCRIPTIVE PERIODS FOR CHILDHOOD SEXUAL ABUSE CLAIMS BY EXTENDING PRESCRIPTIVE PERIODS AND REVIVING PRESCRIBED CLAIMS.**

Louisiana is on a growing list of at least 34 jurisdictions which have enacted various laws to revive previously expired child sex abuse claims, and stands alongside Arizona, Arkansas, California, Delaware, Florida, Georgia, Hawaii, Kentucky, Maine, Michigan, Minnesota, Montana, Nevada, New Jersey, New York, North Carolina, Utah, Vermont, Virginia, District of Columbia, and Guam which have done so explicitly with a time-limited revival window.[1]

The overwhelming majority of those jurisdictions have successfully revived previously time-barred

---

1 See ARIZ: ARIZONA STAT. ANN. § 12-514 (2019), H.B. 2466, 54th Leg., 1st Reg. Sess. (Ariz. 2019); ARK. CODE ANN. § 16-56-130 )1993), S.B. 676, 93rd Leg. 1st Reg. Sess. (Ark. 2021); CAL: CAL. CIV. PROC. CODE § 340.1 (2003, 2019); CONN: CONN. GEN. STAT. § 52-577d (2002); DEL: DEL. CODE ANN. TIT. 10, § 8145 (2007); DC: D.C. CODE § 12-301 (2019); FLA: FLA. STAT. § 95.11 (1992), GA: GA. CODE ANN. § 9-3-33.1 (2015); HAW: HAW. REV. STAT. § 657-1.8 (2012, 2014, 2018); IDAHO: IDAHO CODE § 6-1704 (ID); ILL: 735 ILL. COMP. SAT. 5/13-202.2 (2006); IOWA: IOWA CODE § 614.8A (1991); KAN: KAN. STAT. ANN. § 60-523 (1992); KY: HB 472, 2021 Leg. Sess. (Ky., 2021); LA: H.B. 492, La. Sess. Law. Serv. Act 322 (La. 2021); MAINE: H.P. 605-L.D. 837, Me. Legis. Serv. Ch. 176 (Me., 2021); MASS: MASS. GEN. LAWS ANN. CH. 260 § 4C (2014); MICH: MICH. COMP. LAWS ANN. § 600.585LB (2018); MISS: MO. REV. STAT. § 537.046 (1989); MINN: MINN. STAT. ANN. § 541.073 (1989), 2013 Minn. Sess. Law Serv. Ch. 89 (H.F. 681); MONT: MONT. CODE ANN. § 27-2-216 (1989, 2019); N.C.: N.C. Gen. Stat. 1-17(e); NJ: N.J. STAT. ANN. § 2A: 14-2B (2019), S. 477 2019 Gen. Assemb., Reg. Sess. (N.J. 2019); NY: N.Y. C.P.L.R. § 214-g (2019); NC: N.C. GEN. STAT. ANN. § 1-52 (2019), S 199, 2019 Leg. Reg. Sess. (N.C. 2019); NV: SB 203, 81st Leg. Reg. Sess. (Nv. 2021); OR: OR. REV. STAT. ANN. 12.117 (2010); RI: tit. 9 R.I. GEN. LAWS ANN. §9-1-51 (1996, 2019); SC: S.C. CODE ANN. § 15-3-555 (2001), SD: S.D. CODIFIED LAWS § 26-10-25 91991); UTAH: UTAH CODE ANN. § 78B-2-308 (2016); VT: V.T. STAT. ANN. Tit. 12, § 522 (2019); VA: V.A. CODE ANN. § 8.01-249 (1991); V.A. CONST. ART. 4, § 14 (1995); WV: W. VA. CODE ANN. § 55-2-15 (2020); WYO: WYO. STAT. ANN. § 1-3-105(b)(ii)) (1993); GUAM: 7 G. COMP. ANN. § 11301.1 (2016).

child sex abuse claims with a similar lookback window, discovery rule or by extended age limit. Revival laws for child sex abuse claims have been explicitly upheld as constitutional in at least 12 states – California, Connecticut, Delaware, Georgia, Hawaii, Kansas, Massachusetts, Minnesota, Montana, Oregon, South Dakota, and Virginia.[2]  In the District Court of Columbia, Guam and another 9 states – Arizona, Arkansas, Kentucky, Louisiana, Maine, Michigan, Nevada, Vermont, and West Virginia constitutional challenges have not been mounted.

Like Louisiana, these states recognized that childhood sexual abuse inflicts tremendous harm on Survivors themselves and on society at large. The toxic stress that children experience as a result of the abuse can permanently alter brain development and affect such things as attention, decision-making, learning, and response to stress. Survivors of childhood sexual abuse are 4 times more likely to abuse drugs, 4 times more likely to experience PTSD as adults, and 3 times more likely to experience major depressive episodes as adults.[3] The U.S. Government has estimated that the total lifetime economic burden of child sexual abuse in the United States to be at least $9.3 billion.[4] In passing Act 322, the Legislature has acknowledged that it is time to

---

2 *See Deutsch v. Masonic Homes of Cal., Inc.,* 164 Cal.App.4th 748, 752, 759, 80 Cal.Rptr.3d 368 (Cal.Ct.App.2008); *See Hartford Roman Catholic Diocesan Corp.,* 317 Conn. at 406 (age limit); *Sheehan,* 15 A.3d at 1258-60; *Harvey v. Merchan,* No. S21A0143, 2021 WL 2518868 (Ga. June 21, 2021); *Roe v. Ram,* No. CIV. 14-00027 LEK-RL, 2014 WL 4276647, at *9 (D. Haw. Aug. 29, 2014); *Shirley v. Reif,* 260 Kan. 514, 526, 920 P.2d 405, 413 (1996); *Sliney,* 41 N.E.3d AT 737, 739; *Hoffman,* 452 N.W.2d at 513-14; *Cosgriffe,* 864 p.2d at 779; *Doe v. Silverman,* 287 Or. App. 247, 253, 401 P.3d 793, 797 (2017), review denied, 362 Or. 389, 411 P.3d 382 (2018); *DeLonga,* 329 F.Supp. 2d. at 1104; *Kopalchick v. Cath. Diocese of Richmond,* 274 Va. 332, 337, 645 S.E2d 439 (Va. 2007).

3 https://www.rainn.org/statistics/children-and-teens

4 Letourneau EJ, Brown DS, Fang X, Hassan A, Mercy JA. The economic burden of child sexual abuse in the United States. Child Abuse Negl. 2018 May;79:413-422. doi: 10.1016/j.chiabu.2018.02.020. Epub 2018 Mar 20. PMID: 29533869; PMCID: PMC6542279.

shift the burden off the backs of the Survivors and the Louisiana taxpayers.[5] That harm was caused by the perpetrators and the corrupt organizations that spent decades protecting child molesters, covering up abuse, and getting away with it. The burden of that harm rightfully belongs to the wrongdoers.

## V.    STATUTORY INTERPRETATION ARGUMENTS

### A.    <u>LEGISLATION TRUMPS CUSTOM AND JURISPRUDENCE PURSUANT TO LOUISIANA'S CIVIL LAW.</u>

In Louisiana, the two "sources of law are legislation and custom." La. Civ. Code Ann. art. 1. "Legislation is a solemn expression of legislative will." La. Civ. Code Ann. art. 2. "Custom," which includes jurisprudence, "results from practice repeated for a long time and generally accepted as having acquired the force of law." La. Civ. Code Ann. art. 3. "Custom may not abrogate legislation." Id. "In Louisiana, as in other civil law jurisdictions, legislation is superior to any other source of law." *Duckworth v. Louisiana Farm Bureau Mut. Ins. Co.*, 2011-2835 (La. 11/2/12), 125 So. 3d 1057, 1064. "As the solemn expression of the legislative will, if an enactment provides a solution to a particular situation, then no jurisprudence, usage, equity, or doctrine can prevail over the legislation." *Id.* Unlike in many other states, jurisprudence is "not intended to be an authoritative source of law in Louisiana" and "our civilian tradition does not recognize the doctrine of stare decisis in our state." *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, 2010-2267 (La. 10/25/11), 79 So. 3d 246, 256. In other words, in Louisiana's civil law system, legislation trumps jurisprudence.

### B.    <u>THE CIVIL CODE PROVIDES GUIDELINES FOR INTERPRETATION OF LEGISLATION.</u>

When courts interpret new legislation, they look to the "Interpretation of Law" guidelines set forth in

---

5 Many Survivors have difficulty holding a job due to PTSD and end up receiving government assistance in the form of unemployment benefits or disability. Due to higher rates of drug use they are significantly more likely to end up incarcerated. They even experience higher rates of physical illnesses such as heart disease and autoimmune disorders. It is often the taxpayer that ends up footing the bill for such effects in the form of legal expenses, government assistance, incarceration costs, and unpaid medical bills.

the Louisiana Civil Code arts 9-12. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code Ann. art. 9. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ. Code Ann. art. 10. "The words of a law must be given their generally prevailing meaning." La. Civ. Code Ann. art. 11. "When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code Ann. art. 12.

When the Legislature has not indicated whether it intended for a law to apply retroactively or prospectively, the courts look to Louisiana Civil Code art 6, which states that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only" while "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La. Civ. Code Ann. art. 6. As is discussed below, in Act 322 there is a clear Legislative intent to apply it retroactively and therefore no need to undergo an analysis under Article 6.

C. **THE ESSENTIAL GOAL OF STATUTORY INTERPRETATION IS TO GIVE EFFECT TO THE INTENT OF THE LEGISLATURE.**

Because legislation trumps jurisprudence in Louisiana's Civil Law system, interpretation of a law is primarily the search for the legislature's intent. *Smith v. Southern Holding, Inc.*, Sup.2003, 839 So.2d 5, 2002-1071 (La. 1/28/03). "It is only when a particular situation is not covered by legislation that a solution can be sought elsewhere." *Id.* Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. *Progressive Sec. Ins. Co. v. Foster*, 97-2985 (La. 4/23/98), 711 So. 2d 675, 684. The legislative history of an act and contemporaneous circumstances are "helpful guides in

9

ascertaining legislative intent." *Mayeux v. Charlet*, 2016-1463 (La. 10/28/16), 203 So. 3d 1030, 1036.

## VI.    DEFENDANTS ARGUMENTS REGARDING STATUTORY INTERPRETATION

In addition to the constitutional arguments which will be discussed further below, Defendants make three arguments based on their own interpretations of Act 322: (1) the Lookback Window only revives causes of action which had not yet prescribed prior to the 1993 passage of an earlier version of Section 2800.9 (hereinafter, the "1993 Argument"); (2) the amendments to Section 2800.9 do not apply to organizations that enabled child predators because those organizations' actions do not fall within the definition of "sexual abuse of a minor"; and (3) the Lookback Window does not apply to enabling organizations because they are not a "party" to the abuse.

All three of the Defendants' statutory interpretation arguments do the following: (1) distort the clear language of the statute in a way that shields liable third party organizations from responsibility for their disastrous behavior; (2) violate the clear intent of the Legislature to expand – not limit - Survivors' access to justice; and (3) disregard the Legislative history confirming that Act 322 was intended revive all Survivor's claims previously prescribed claims regardless of when they prescribed. Each argument is discussed individually below.

> A.    **DEFENDANTS' 1993 ARGUMENT IS FACIALLY INCORRECT AND CLEARLY CONTRARY TO THE LEGISLATURE'S INTENT TO EXPAND ACCESS TO JUSTICE FOR ALL SURVIVORS, PARTICULARLY THOSE WHO WERE UNABLE TO COME FORWARD UNTIL LATER IN ADULTHOOD.**

> i.    **THE STATUTORY LANGUAGE CLEARLY REVIVES ALL CLAIMS REGARDLESS OF WHEN THEY PRESCRIBED.**

The language contained in the Lookback Window itself, which is the end-product of extensive

deliberation and received unanimous bipartisan support, shows that it was intended to revive all prescribed claims relating to childhood sexual abuse, regardless of when or under which statute they prescribed. The final sentence of the revival clause specifies that the legislature intended "to revive for a period of three years ***any claim*** against a party that is authorized under R.S. 9:2800.9 ***that prescribed prior to the effective date of this Act***." Act 322, La. Rev. Stat. § 9:2800.9 (2021 amendment) (emphasis added). The Act became effective in August 2021, so "any claim" that prescribed prior to August 2021 is revived by the Lookback Window regardless of the specific prescriptive statute under which it prescribed.

Defendants argue that the provision does not revive any claims that prescribed prior to 1993 when the first version of R.S. 9:2800.9 was passed. This ignores the language referring to "any claim… that prescribed prior to the effective date of this Act" and instead fixates on the language referencing Section 2800.9. Defendants point to the language which says the act pertains to "any party whose action under R.S. 9:2800.9 was barred by liberative prescription…" as well as the language where it says it revives "any claim against a party, authorized by R.S. 9:2800.9…" Defendants argue that the terms "authorized by" and "under" limit the application of the entire provision to cases that originally could have been brought under the Section 2800.9 which came into existence in 1993. Under this interpretation, the Lookback Window would only revive claims which specifically prescribed under the prescriptive period set forth by Section 2800.9 in 1993. This is an exceedingly odd reading of the provision, particularly in light of the fact that that Section 2800.9 was originally enacted as Civil Code Art. 3498.1 and wasn't redesignated as Section 2800.9 until years later.

If the legislature wanted to limit the Lookback Window's application to cases which prescribed specifically under Section 2800.9, it could easily have done so by saying that it revives "all claims which were

barred by the prescriptive period provided in R.S. 9:2800.9."[6] Or, as the Legislature often does, it could have

selected a specific date and specify that it only revives claims which had not prescribed prior to that date. Either

of those options would have been much more efficient. Instead, the Legislature used language reviving any

cases "that prescribed prior to the effective date of this Act."

Defendant's reading of the statute is contrary to the plain language and the most natural reading of the

statute. The most natural reading of "authorized by" and "under" Section 2800.9 is that it includes all claims

which are the subject of Section 2800.9 (i.e., claims "against a person for sexual abuse of a minor"). The

Lookback Window itself is not incorporated into the text of Section 2800.9. Therefore, it is natural that the

Lookback Window would reference Section 2800.9 simply as a convenient way for the Legislature to identify

the types of claims (i.e., sexual abuse claims) they are reviving.

Defendants' reliance on *Hall v. Hall*, 516 So.2d 119, (La. 1987) is misplaced. Hall was decided in

1987, before Section 2800.9 even existed.[7] Their reliance on *Jayson Doe v. Jesuit High School of New*

*Orleans et al.*, is equally misplaced. There, the Fourth Circuit addressed the retroactivity of the

---

6 This was the language the Legislature used when it provided a window for certain asbestos cases that had prescribed under La. R.S. 9:5644.

7 *Hall* centered on whether the newly enacted La. Civ. Code Ann. art. 3469 suspending prescription between minors and their caretakers would be applied retroactively to revive a claim which prescribed prior to the enactment of art 3469. There, the legislature had been silent on whether it was intended to apply prospectively or retroactively. See La. Civ. Code Ann. art. 3469 and Legislative Revision Comments of 1982. In a brief two-page decision with essentially no discussion or explanation of its reasons, the Louisiana Supreme Court held that Article 3469 did not revive the prescribed cause of action. *Hall v. Hall*, 516 So. 2d 119, 120 (La. 1987).

certifcates of merits requirements from the pre-Act 322 version of Section 2800.9.[8]

### ii. THE DEFENDANTS' INTERPRETATION IGNORES THE PROCEDURAL NATURE OF SECTION 2800.9

Defendant's argument fails to acknowledge that Section 2800.9 is a procedural statute. As a procedural statute, Section 2800.9 cannot create a cause of action. When it passed in 1993 it did not "authorize" a new type of claim or create a new cause of action. It simply provided a new liberative prescriptive period and other procedural mechanisms for bringing claims related to child sexual abuse. Here, Plaintiff's cause of action arises under Article 2315 of the Civil Code which states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." In Louisiana, Survivors have been bringing claims under Article 2315 since well before Section 2800.9 was passed. Section 2800.9 is merely a procedural adjunct that applies specifically to child abuse claims. Plaintiff Lousteau's claim is "authorized" by Section 2800.9 because it falls within the definition of the types of claims that the section applies to.

The Supreme Court of Louisiana has recognized that if the Legislature has expressed a clear intent as to whether new legislation is intended to be applied retroactively "the process is at an end and the law must be characterized as the Legislature intended." *Manuel v. Louisiana Sheriff's Risk Mgmt. Fund*, 664 So. 2d 81, 86 (La. 11/27/95). Here, because the language of Act 322 is clear that it revives all child sexual abuse claims no matter how old they are or which prescriptive statute they prescribed under, no further inquiry is needed.

---

8 No. 21-0284 (La. App. 4 Cir. 11/10/21); - So.3d -, slip op at 4. The Fourth Circuit Court of Appeals faced the question of whether a lawsuit filed prior to the passage of Act 322 was deficient for failing to include Certificates of Merit with the initial petition for damages as required by Section 2800.9. There, the Fourth Circuit held that the petition was deficient for failure to include the certificates, because even though the alleged abuse occurred in 1978, the certificate of merit requirements of Section 2800.9 was procedural and therefore applied retroactively. *Id* at 7. They ordered that the petition be dismissed without prejudice. *Id* at 2.

### iii. THE LEGISLATIVE HISTORY CLEARLY DEMONSTRATES THAT THE LEGISLATURE INTENDED TO EXPAND ACCESS TO JUSTICE TO ALL SURVIVORS, INCLUDING THOSE OVER 52 YEARS OLD.

A review of the Legislative history confirms that Act 322 was intended to expand access to justice for Survivors by reviving all claims for child sexual abuse that prescribed under any prescriptive period prior to the passage of Act 322.

When first introducing the bill, House sponsor Representative Jason Hughes emphasized the "overwhelming body of science" indicating that the nature of the extreme trauma of childhood sexual abuse, causes survivors to suffer "PTSD, memory deficits, and complete disassociation" and other lifelong practical and psychological circumstances which "prevent children from disclosing the abuse" until they are, on average, 52 years old. Rep. Jason Hughes, May 3, 2021, *Hearing at the House of Representatives*, Bill 492, at 5:21-7:4. *(Attached hereto as Exhibit "2")*. Representative Hughes lamented the fact that by this time the courthouse doors were typically shut to those Survivors. *Id*. He explained that though the effects of the abuse are highly individualized, by the very nature of the act, it severely limits its Survivors' ability to come forward about the abuse - with 33% never coming forward at all. *Id*.

When Representative Jason Hughes initially proposed House Bill 492 which later became Act 322, the proposed legislation extended the prescriptive period for actions for sexual abuse of children from 10 years to 35 years. This would have increased the age by which survivors must file their lawsuit from age 28 to age 53, thereby bringing it more in line with the average age that survivors typically come forward (52). The original version of the bill contained no Lookback Window. See H.B. 492, Leg. Reg. Sess. (La. 2021). Republican Senator J. Cameron Henry proposed the amendment to add the Lookback Window, initially suggesting that it last for 5 years. June 10,

2021, *Final Hearing Before Passage of Bill 492*, at 7:15-17. *(Attached hereto as Exhibit "3").*[9]

The Legislature received widespread bipartisan praise and by the time the HB 492 had gone through all final revisions, the legislature had completely removed the prescriptive period for bringing claims of childhood sexual abuse and added the Lookback Window. As Representative Hughes noted, these changes to the original draft bill were made because "many of our colleagues at that time on both sides of the aisle, said that the bill did not go far enough." *Id* 6:20-7:1.

During the final hearing on the bill, Representative Hughes took the floor to explain that Act 322's revival clause is intended to do precisely what Defendants claim it does not do—allow Survivors of any age to sue for abuse no matter when the abuse occurred or what statute it prescribed under:

> REPRESENTATIVE FRIEMAN: Representative Hughes, on the lookback period. I just want to be sure everyone understands how that works. So, if it's currently prescribed, a claim would be currently prescribed, how does that lookback work— lookback period work? Can you explain that?
>
> REPRESENTATIVE HUGHES: If — if the claim is currently prescribed-
>
> REPRESENTATIVE FRIEMAN: Right.
>
> REPRESENTATIVE HUGHES: — a victim, if this bill was to pass in this posture, will have a three year period to go back and file a lawsuit and the burden of proof would be on that victim.
>
> REPRESENTATIVE FRIEMAN: So, if it's — so, if it's prescribed for over ten or 20 years, they can — that person has three years to come in now or is it — if it's prescribed within the three year window prior?
>
> REPRESENTATIVE HUGHES: If any victim, is my understanding, and I am not a lawyer, you are. If — if — but it's my understanding **that _any victim_ that is already prescribed** out will now have a three year period to come back, if they desire, to file suit and the burden of proof would be on them.

---

[9] Taking into account the context of the law as a whole and the legislative intent, it is clear that Senator Henry's comments that the Lookback Window would be "a little bit retroactive" which is relied upon by Defendants was intended to mean that the Lookback Window would only open for a period of several years.

June 10, 2021, *Final Hearing Before Passage of Bill 492*, at 8:2-25. *(Exhibit "3") (emphasis added).*

Upon being questioned for even more clarification, Representative Hughes continued:

REPRESENTATIVE HUGHES: So, again, Representative, if - - you know, we have several victims that have already prescribed out, they're well past 28 years old. So if you've already prescribed out if this legislation was to pass and be signed into law you would have a three year period to go back and file a lawsuit and that burden of proof would be on –

REPRESENTATIVE IVEY: **So, regardless of age, if this law is passed, they would have that three year period?**

REPRESENTATIVE HUGHES: **Yes**.

REPRESENTATIVE IVEY: Okay.

REPRESENTATIVE HUGHES: But as you recall from the debate, and I talked very in depth about delayed disclosure, the average victim does not come forward until they're 52 years old and there's many reasons for that, shame, embarrassment. There's a lot of mental issues going on and, so, yes.

REPRESENTATIVE IVEY: (indiscernible) traumas last a lifetime.

REPRESENTATIVE HUGHES: Yes.

June 10, 2021, *Final Hearing Before Passage of Bill 492*, at 10:15-11:11 *(emphasis added). (Attached hereto as Exhibit "3")*.

This is the description of the Lookback Window that the Legislature heard before they unanimously voted to pass Act 322. Defendants' claim that the legislature intended it to revive only claims that had not prescribed prior to 1993 finds absolutely no support in the Legislative history. Not once did the legislature discuss limiting the application of the Lookback Window to cases which had not yet prescribed before Section 2800.9 was first passed. The Legislature did not even mention the fact that Section 2800.9 was passed in 1993. Nor did they reference any of the other various prescriptive statutes which could have applied to childhood sexual abuse cases throughout

Louisiana's past.[10] There was simply no need to discuss such things because the Lookback Window was always intended to apply to all claims for childhood sexual abuse which had prescribed prior to the effective date of Act 322 under any prescriptive statute.

Laws must be "applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 302. To the extent this Court deems the language of the Lookback Window to be unclear, it must be interpreted by "examining the context" of the "law as a whole" and in the way that "best conform[s] to the purpose of the law." La. Civ. Code Ann. art. 10 & art. 12. Organizations that enabled child predators throughout the peak of child sexual abuse in the 70s and 80s would certainly prefer that the Lookback Window apply only to cases which had not prescribed prior to 1993. But there is no support whatsoever for such an interpretation in the legislative history and it does not comport with the purpose of the law.

iv.   **THE 1993 ARGUMENT LEADS TO ABSURD CONSEQUENCES WHICH ARE INCONSISTENT WITH THE LEGISLATURE'S INTENT.**

"[T]he object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000-1695 (La. 6/29/01), 808 So. 2d 294, 302). The Defendants' proposed reading of the Lookback Window would create the absurd result which harshly and arbitrary limits the scope of the Lookback Window such that it would only apply to a small and somewhat random subset Survivors. Under Defendants' reading, the oldest person whose claim would be revived under the Lookback Window would only be 46 years old today. Not a single person

---

10 *E.g.*, La. Civ. Code. Art. 3469 enacted in 1983 which extended prescription as between caretakers and children during minority, or Art 3496.1 enacted in 1988 which stated that an action against a person for abuse of a minor is subject to a three year liberative prescription period.

above the age of 52 would benefit from the Lookback Window. The vast majority of the abuse survivors who would benefit from it are currently in their 30s. For older adults, the courthouse doors would remain shut.

The legislature's commitment to expanding access to justice for Survivors over age 52 could not have been more clear. Originally, the bill proposed to extend prescription up to when the Survivor turns 53. This number was chosen specifically because 52 is the average age victims come forward, if they do at all. Rep. Jason Hughes, May 3, 2021, *Hearing at the House of Representatives*, Bill 492, at 16:1-9. *(Attached hereto as Exhibit "2")*.

By the time the bill passed, the Legislature had removed the prescriptive period entirely because, as explained by Rep. Hughes, legislators "on both sides of the aisle" had agreed that a bill which would only give Survivors up until age 53 to come forward "did not go far enough." Rep. Jason Hughes June 10, 2021, Final Hearing Before Passage of Bill 492, at 6:24-7:1. *(Attached hereto as Exhibit "3")*.

When the bill passed, Representative Hughes noted that it was being brought "on behalf of every victim and survivor of child sexual abuse" and that it is "never to late to do the right thing." Id at 5:22-23 and 14:18-20. It would be absurd for the Legislature, whose clear intent was to expand access to justice for Survivors over age 52, to pass a Lookback Window which exclusively and arbitrarily benefits Survivors in their 30s or 40s. Thus, the Defendants' 1993 Argument fails as a matter of law, fact, and policy.

**B. DEFENDANTS' ARGUMENT THAT THE EXTENDED PRESCRIPTIVE PERIOD IN SECTION 2800.9 NO LONGER APPLIES TO THIRD PARTY WOULD HAVE THE EFFECT OF PERMANENTLY EVISCERATING ACCESS TO JUSTICE FOR ALL PAST AND FUTURE SURVIVORS.**

Defendants argue that Section 2800.9, which the legislature clearly intended to <u>expand</u> justice to Survivors, in fact destroys nearly every realistic hope of recovery that past and future Survivors previously had. Specifically, Defendants suggest that the extended prescriptive period contained in Section 2800.9, which had

previously been held by Louisiana courts to apply to liable third party organizations, no longer does. Their argument is based on the fact the Legislature crossed out the portion of Section A(1) defining abuse as being the same as in Article 603 of the Children's Code.

The effect of Defendant's reading of the statute would be devastating. From now on, the prescriptive period for sexual abuse claim against liable organizations would revert to the standard one-year prescriptive period which was applied prior to 1993. That means that if a five year old girl were to be sexually abused in Louisiana tomorrow, her only real chance of receiving compensation would be if she is within that tiny minority of Survivors who is able to disclose the abuse to her parents immediately. And even then, she must have the knowledge and verbal skills, as a five year old, to make her disclosure clear, and her parents have to believe her and have the wherewithal to file a lawsuit on her behalf within a year.

The effects would be equally devastating for Survivors of past abuse. Since the Section 2800.9 was held by courts to apply to liable third party organization prior to the passage of Act 322, Survivors had a vested right to bring a cause of action against a liable organization. But under Defendants interpretation, Act 322's passage permanently extinguished that vested right claim, summarily, without warning, and without any clearly expressed intent on the Legislature's part to take such a drastic measure.

An additional effect would be to severely undermine one of the most important positive societal impacts of Section 2800.9 – the identification of hidden child molesters. It is a common occurrence for adult Survivors who were abused very young not to remember the name of their abuser. But they typically do recall the position that their abuser held within an organization (e.g., priest, soccer coach, etc.). In those cases, they can sue the organization and use the discovery process to obtain the organization's records and identify the predator. The predator can then be located, and other children can be protected from them. Without being able to sue the liable organization, Survivors would have to rely on those organizations to voluntarily hand over

information about their abuser's identity. History has shown this almost never happens, because organizations that protected child molesters in the past typically continue protecting them in order to avoid the negative publicity of a scandal.

It would be absurd for the Legislature, which proudly proclaimed its intent to expand Survivors' access to justice, to enact a statute which in practice completely destroys any real chance Survivors have at recovery. There is absolutely nothing in the legislative history which would support the idea that the Legislature intended to limit the definition of abuse in any way – much less in a way that permanently and catastrophically harms past and future Survivors'.

A review of the blackline copy depicting the changes to Section A(1) shows that the reference to Art. 603 was more likely struck by coincidence because it happened to be in the middle of a large section of text which was being removed in order to provide that all sexual abuse claims do not prescribe.[11] *See Exhibit "4".*

Regardless of the reference to Article 603, the text of Section 2800.9 has always applied to actions "against a person for sexual abuse of a minor." The very same case which Defendants cite in support of their argument has already held that in the context of Section 2800.9, "person" means both a natural person and a juridical person. *Ss v. State ex rel. Dep't of Soc. Servs.*, 2002-0831 (La. 12/4/02), 831 So.2d 926. If the Legislature had wanted to limit the Lookback Window's application to perpetrators only, it would have done so explicitly as it the statute which provides for exemplary damages in cases of child

---

11 The blackline version showing the changes states as follows: "An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, ~~is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603(1). This prescriptive period shall be subject to any exception of preemption provided by law.~~ shall not prescribe."

sexual abuse, and explicitly states that it "shall be applicable <u>only to the perpetrator</u> of the criminal sexual activity." La. Civ. Code art. 2315.7 *(emphasis added)*.

The legislative history shows that the Legislature intended all sections of Act 322 to apply to liable organizations. The ongoing Bankruptcy of the Archdiocese of New Orleans loomed large over the hearings, with multiple Survivors testifying to its effect and to the effect of other organizations who have covered up abuse for decades. May 3, 2021, *Hearing at the House of Representatives*, Bill 492, at 11:22-12:3, and 31:8-21 *(Attached hereto as Exhibit "2")*. Various legislators made statements which showed that they intended Act 322 to apply to liable organizations. Representative Landry stated that though she "would not typically support extensions on prescription," but given the situation with the "Catholic Church … where so many of its members guilty of this horrible crime, but the church itself actively hid what was happening" and "transferred… these people so that the crimes continued," she deemed it "such a specific and special circumstance" that she would do "anything [she] can do to help pass this." Id. at 13:9-17. Representative Johnson expressed the intent to ensure organizations like schools and their insurers would remain liable under the new prescriptive period to ensure that victims are truly compensated and suggested he would not support the bill if it meant Survivors would be deprived of compensation from insurers and third party organizations. *Id* at 14:6-15:20.

Here, Plaintiff's cause of action supports numerous causes of action against Holy Cross, such as negligence, gross negligence, intentional tort, and vicarious liability. Plaintiff's Petition also supports legal principles that require a direct actor and indirect actor to be liable *in solido* and pursuant to respondeat superior. Two defendants can be held liable *in solido* if they act in concert. "He who conspires with another person to commit an intentional or willful act is answerable, *in solido*, with that person, for the damage caused by such act." LA. Civ. Code art. 2324(A).

**C.  DEFENDANTS' ARGUMENT THAT THE LOOKBACK WINDOW DOES NOT APPLY TO ENABLING ORGANIZATIONS IS FACIALLY INCORRECT AND DIRECTLY CONTRARY TO THE LEGISLATURE'S INTENT TO EXPAND JUSTICE TO SURVIVORS.**

Defendants' third statutory interpretation argument suggests that because the Lookback Window uses the term "party" instead of "person" it can only revive claims against the actual perpetrator of the abuse. Defendants put forth a misleading and selective definition of "party" from Black's Law Dictionary as "someone who takes part in a transaction." They then summarily conclude that only the victim and perpetrator are "parties" to the abuse. This argument ignores the plain language and legal use of the term "party" and the intent of the legislature. Another Black's Law Dictionary's definition of "party" is as follows:

> "Party" is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, <u>whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons</u>; all others who may be affected by the suit, indirectly or consequently, are persons interest but not parties.

BLACK'S LAW DICTIONARY, at 1122 (6th Ed. 1990) *(emphasis added)*.

Defendants are a "party" to this case because their employee sexually molested Plaintiff when he was a little boy.  In his Petition, Plaintiff alleges numerous facts that support a host of causes of action against Holy Cross, such a negligence, gross negligence, intentional tort, and vicarious liability.

Defendants also point again to the fact that the reference to Article 603 as the definition of abuse was removed. For the reasons already stated above, it is clear that the Legislature had no intent to alter the definition of Abuse in a way that would exclude actions against liable third parties because the intent of Act 322 was to expand – not limit – access to justice for Survivors.

As described above, legislators directly expressed their desire to apply Act 322 to liable organizations. The use of the term "party" within the lookback window was more likely a stylistic choice meant to ensure that

the language remained as broad as possible. The Legislatures understands that to truly remedy the injustice of decades of child sexual abuse, all responsible parties - not just the perpetrator - must be brought to trial. Like many other organizations, Holy Cross's has a history of hiring and enabling child molesters. They share culpability for the acts of those predators. Child molesters are compulsive mentally-ill predators. Organizations that enable and protect these predators, repeatedly placing them in positions of trust alone with children, are directly culpable. Their responsibility is the same as that of a lion tamer unleashing his lions on an unsuspecting crowd and then turning a blind eye while the lions devour the poor victims.

**VII. DUE TO THE EXTRAORDINARY NATURE OF CHILDHOOD SEXUAL ABUSE CLAIMS DEFENDANTS RIGHT TO ASSERT PRESCRIPTION NEVER FULLY VESTED**

        **A. <u>THE RIGHT TO ASSERT PRESCRIPTION AGAINST A CLAIM WHICH PRESCRIBED UNDER A TRUE LIBERATIVE PRESCRIPTION PERIOD IS AN "INCHOATE" RIGHT AND THEREFORE NOT A FULLY VESTED RIGHT.</u>**

Defendants' arguments hinge on Defendant proving that their right to assert prescription against Plaintiff's claims was fully vested when the Lookback Window passed. Prescriptive statutes are remedial and procedural in nature, and therefore they apply retroactively even without express legislative intent. So with respect to any rights of Defendants to assert prescription that have not yet fully vested, the extended prescriptive period of Section 2800.9 would automatically apply "retroactively." La. Civ. Code. Art. 6. In order to "vest" and therefore be protected by Due Process, a right must be "absolute, complete and unconditional, independent of a contingency." *Church Mut. Ins. Co. v. Dardar*, 2013-2351 (La. 5/7/14), 145 So. 3d 271, 281; See also *Smith v. Bd. of Trustees of Louisiana State Employees' Ret. Sys.*, 2002-2161 (La. 6/27/03), 851 So. 2d 1100.

Louisiana Civil Law includes multiple types of prescription. Although they are often collective referred to as "prescription" defenses, each type of prescription is legally and practically separate and distinct.

Peremptive prescription "is a period of time fixed by law for the existence of a right" and '[u]nless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. Civ. Code Ann. art. 3458. Peremptive prescription may not be renounced, interrupted, or suspended. La. Civ. Code Ann. art. 3461. *Contra Non Valentem* cannot apply to it. *Naghi v. Brener,* 2008-2527 (La. 6/26/09), 17 So. 3d 919, 926. It is absolute and complete, and not subject to any condition or contingency, and therefore vests upon the running of the period.

Liberative prescription is a mode of barring of actions as a result of inaction for a period of time." La. Civ. Code Ann. art. 3447. Although accrual of liberative prescription prevents the enforcement of a right by legal action, it does not extinguish the underlying natural obligation (La.C.C. art. 1762(1); see also *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, on reh'g (July 1, 2008) ("While liberative prescription merely prevents the enforcement of a right by action, it does not terminate the natural obligation; peremption, however, destroys or extinguishes the right itself.")

Liberative prescription has been described by the Louisiana Supreme Court as an "inchoate right." *Id* at 49; See also, *Naghi v. Brener*, 2008-2527 (La. 6/26/09), 17 So. 3d 919, 926 (citing *Hebert v. Doctors Memorial Hosp.*, 486 So.2d 717, 723 (La.1986)). As an inchoate right, Liberative prescription "may be renounced, interrupted, or suspended, and *contra non valentem* applies as an exception" to it. *Id.* A liberatively prescribed judgment "is not a nullity; rather it creates a natural obligation." *Shields Mott Lund, L.L.P. v. P.R. Contractors, Inc.*, App. 4 Cir.2013, 122 So.3d 554, 2012-1327 (La.App. 4 Cir. 3/27/13), on rehearing. Thus, true liberative prescription is subject to "conditions and contingencies," which can prevent it from fully vested upon accrual of the time period.

Any fixed prescriptive period can be either "liberative" or "peremptive," and "[i]t is not always easy to determine whether a period of time fixed by law" is liberative or peremptive. *Id*. The

Louisiana Supreme Court explained that "the Civil Code gives no guidance on how to determine whether a particular time limitation is prescriptive or peremptive and more often than not, the language used in a particular statutory time limitation does not easily admit on its face of a conclusion as to its prescriptive or peremptive nature." *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, on reh'g (July 1, 2008)" "The determination must be made in each case in the light of the purpose of the rule in question and in light of whether the intent behind the rule is to bar action or to limit the duration of a right." La. Civ. Code Ann. art. 3458, Revision Comment (c); See also *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, on reh'g (July 1, 2008).

**B.**     **IN LOUISIANA, PRESCRIPTION FOR CHILD SEXUAL ABUSE CLAIMS HAS CONSISTENTLY BEEN TREATED AS LIBERATIVE AND HAS BEEN SUBJECT TO FREQUENT AND EXPANSIVE APPLICATIONS OF *CONTRA NON VALENTEM* BY THE SUPREME COURT DUE TO THE EXTRAORDINARY AND UNUSUAL NATURE OF CHILD SEXUAL ABUSE.**

In order to determine whether defendants' right to assert prescription fully "vested," the Court must determine whether the prescriptive periods relating to claims of childhood sexual abuse claims were by nature true liberative prescription periods or whether they were peremptive. In order to make this determination, we must "look to the language of the statute, the purpose behind the statute, and the public policy mitigating for or against suspension, interruption or renunciation of that time limit." *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So. 2d 42, 49, on reh'g (July 1, 2008).

The language of the statute under which Defendants allege Plaintiff's claim prescribed, Louisiana Civil Code Article 3492, states that "Delictual actions are subject to a **liberative prescription** of one year." La. Civ. Code Ann. art. 3492 (emphasis added).

The public policy mitigating for allowance of suspension, interruption or renunciation of that time limit

is strong. Under Louisiana law and jurisprudence, claims arising from incidences of child sexual abuse have repeatedly been acknowledged to be extraordinarily distinct from other types of tort claims. As discussed above, these types of claims are one of the only tort claims for which punitive damages are available. Also, even prior to the passage of Act 322, the prescriptive period for such claims was longer than almost any other civil tort claim. Additionally, the Louisiana courts have consistently treated child sex abuse prescription as inchoate and therefore subject to interruption, suspension, renunciation, and the judicially created equitable doctrine of *contra non valentem*.[12]

In *Wimberly v. Gatch*, the Louisiana Supreme Court addressed whether *contra non valentem* could be applied to an otherwise prescribed childhood sexual abuse case. 635 So. 2d 206 (La. 1994). In discussing *contra non valentem*, the Court explained that "[t]he equitable doctrine is, in part, but an application of the long-established principle of law that one should not be able to take advantage of one's own wrongful act." *Id* at 212. The Court then went into great detail regarding the new research on what, at the time, was known as Childhood Sexual Abuse Accommodation Syndrome (CSAAS). *Id.* CSAAS describes how "the dynamics of child sexual victimization" cause the victim to experience extraordinary "self-blame, fear of blame, retaliation, etc." and that "the normal child victim of sexual abuse is likely to never disclose, not immediately disclose or partially disclose the extent or frequency of their involvement in the sexual abuse." *Id* at 213-216. They pointed to the fact that, by the very nature of the wrongful act, childhood sexual abuse causes victims to engage in patterns of "secrecy" and "helplessness," and that "[s]ilence is intrinsic to the victimization process." *Id* at 214.

---

12 "Generally, the doctrine of contra non valentem suspends prescription where the circumstances of the case fall into one of the following four categories: 1. Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; 2. Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; 3. Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and 4. Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

Equipped with this knowledge, the Court "refuse[d] to . . . reward the molester by allowing him to profit by the normal behavioral reactions of his victim to the sexual abuse." *Id* at 215. They went on to declare that "in civil actions, the child victim's delayed or partial disclosure will not be countenanced, in law or equity, to victimize the child a second time," and ruled that "[b]ecause 'behavioral dynamics of the victimization' facilitated" the delayed disclosure, the third category of contra non valentem would apply "to prevent defendants from profiting from their own wrong." *Id* at 217.

In another case, the Louisiana Supreme Court applied *contra non valentem* to an otherwise prescribed childhood sexual abuse claim brought two years after the victim reached the age of majority. *Held v. State Farm Ins. Co.*, 610 So. 2d 1017 (La. Ct. App. 1992), *writ denied*, 613 So. 2d 975 (La. 1993), *and writ denied*, 613 So. 2d 975 (La. 1993). The Court had explained that the prescriptive period was interrupted while plaintiff was suffering from Post-traumatic-stress-disorder which left her "unable to act" to enforce her rights until she was able to "accept in her own mind she was truly an innocent victim." *Id* at 1019. The court acknowledged that PTSD from childhood sexual abuse can be just as disabling as an organic brain injury. *Id*.

In yet another case, the Louisiana Supreme Court applied the equitable doctrine of contra non valentem to suspend the running of prescription of a childhood sexual abuse case where the minor child was in the custody of the state when she was sexually abused and therefore was unable to sue due to "lack of clarity in the law regarding who could represent her at that time." *Bouterie v. Crane*, 616 So. 2d 657 (La. 1993). The court recognized that even though the case "does not squarely fit into any one of the four general *contra non valentem* situations," the equitable doctrine can also be applied "when a legal impossibility exists, when a condition coupled with a contract or other proceeding prevents plaintiff from acting, and when an obstacle set up by the defendant exists." Bouterie v. Crane, 616 So. 2d 657, 660 (La. 1993).

In a more recent 2002 case where the lawsuit had been filed 17 years after the last act of abuse, the Louisiana Supreme Court examined whether *contra non valentem* would apply where the victim's memories of the abuse had been "repressed" due to "dissociative amnesia" caused by the abuse. *Doe v. Archdiocese of New Orleans*, 2001-0739 (La. App. 4 Cir. 5/8/02), 823 So. 2d 360, 362, writ denied, 2002-1960 (La. 11/8/02), 828 So. 2d 1127. The court held that if the plaintiff's memory was indeed repressed, *contra non valentem* would apply to suspend prescription. *Id*. They explained that since the existence of a repressed memory is a factual issue, a full trial on the merits would be needed to determine the matter of prescription. *Id* at 365.

Additionally, it is clear that public policy supports treating prescription of the extraordinary tort of child sexual abuse as true liberative prescription due to the harsh results to Survivors and society at large if these claims continue to be swept under the rug. Upon introducing the bill, Representative Hughes directly acknowledged the "overwhelming body of evidence" that the "trauma stemming from child sexual abuse... impacts victims throughout their lifetimes" and causes "repression of memories" and "PTSD". Rep. Jason Hughes, May 3, 2021, *Hearing at the House of Representatives*, Bill 492, at 5:23-6:3, Exhibit 2 (*emphasis added*). He explained that the effects of the trauma from the abuse is "one of the barriers preventing children from disclosing abuse" along with other concerns like the "lack of knowledge needed to recognize child sexual abuse" and the inability to "articulate that they have been abused." *Id* at 6:3-6. These statements echo the statements of the Louisiana Supreme Court in their various opinions applying *contra non valentem* to child sexual abuse claims.

The public policy support is further exemplified by the Louisiana Supreme Court repeatedly creating broad and unprecedented expansions to the application of the doctrine of *contra non valentem* to ensure that wrongdoers do not profit from their wrongs and that Survivors get their day in court. It is useful to note that the *contra non valentem* exceptions created by the various decisions of the Supreme Court are of the type that they

could arise at any time throughout the Plaintiff's entire life. The Survivor could finally recover from their PTSD at age 85 or could recover a repressed memory on their death bed.

Therefore, even prior to passage of Act 322, so long as the Survivor was alive, the defendant could not truly have an expectation of being able to definitively assert the defense of prescription against a Survivor's claim. In this extraordinarily unusual type of case, the contingencies created by the numerous *contra non valentem* applications (as well as the other traditional means of interrupting prescription such as renunciation and acknowledgement), some of which could only be applied by the courts, rendered the right to assert prescription inchoate by its very nature. Therefore, in the particular limited circumstance of childhood sexual abuse claims, the right the defendants does not to assert prescription did not fully vest upon the accrual of the stated prescriptive period.

VIII. **PLAINTIFF LOUSTEAU'S CLAIM DID NOT PRESCRIBE PRIOR TO THE PASSAGE OF 1993 DUE TO THE *APPLICATION OF CONTRA NON VALENTEM* AND TO DEFENDANTS TACIT RENUNCIATION OF PRESCRIPTION**

A. ***CONTRA NON VALENTEM* APPLIES TO PLAINTIFF'S CLAIMS**

Since the date Brother Repucci sexually molested Mr. Lousteau, Mr. Lousteau has suffered continually from Post-Traumatic Stress Disorder, other psychological trauma, practical and legal conditions which were no fault of his own which were left him unable to act to preserve his rights. These conditions were a direct result of the wrongdoing of Br. Repucci and the Defendants. Thus, Plaintiff's asserts that the prescriptive period for his action for child sexual abuse against the Defendants was suspended pursuant to the doctrine of *contra non valentem*, up through and including until the passage of Act 322. Therefore, Defendants right to assert prescription against Mr. Lousteau never vested and their rights are not violated by the application of Act 322 to Mr. Lousteau's claims.

IX.    APPLICABLE DUE PROCESS ANALYSIS STANDARDS

In an attempt to evade responsibility for their role in enabling child molesters, Defendants urge the Court to hold that the Lookback Window is unconstitutional because it violates the Due Process clauses of the Louisiana and federal Constitutions. Defendants claim that it infringes upon their allegedly vested property right to plead the accrual of liberative prescription, and that the Louisiana Legislature does not have the power to revive a previously prescribed claim.

A.    **THE LOUISIANA LEGISLATURE HAS PLENARY POWER TO ENACT ANY LEGISLATION NOT SPECIFICALLY PROHIBITED BY THE LOUISIANA CONSTITUTION.**

Unlike the federal government, which only has those powers granted to it by statute, the Louisiana Legislature may enact "any legislation that the state constitution does not prohibit." *Bd. Of Dirs. Of the La. Recovery Dist. V. All Taxpayers, Property Owners, & Citizens of La.*, 529 So.2d 384, 387 (La. 1988). "[T]o to hold legislation invalid under the constitution, it is necessary to rely on some particular constitutional provision that limits the power of the Legislature to enact such a statute." *Id.* "In an attack upon a legislative act as falling within an exception to the Legislature's otherwise plenary power, it is not enough to show that the constitutionality is fairly debatable, but, rather, it must be shown clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact the statute." *Id* at 388 (emphasis added).

There is currently no provision in the Louisiana Constitution stating that the Legislature may not enact a law divesting vested rights. Some Louisiana courts have held that "A state law divesting vested rights violates no constitutional provision where it does not impair the obligation of a contract; it is only when legislation acts upon contracts, as distinct from vested rights, that the prohibition against impairment of the obligation is infringed." *Louisiana Gas Serv. Co. v. Louisiana Pub. Serv. Comm'n*, 245 La. 1029, 1052, 162 So. 2d 555, 562–63 (1964) (citing *State ex. rel Porterie* v. Walmsley, 183 La. 139, 162 So. 826).

Although earlier versions of the Louisiana Constitution did include language in its Contracts Clause prohibiting the Legislature from divesting vested rights, the language was later removed in an effort to conform the Louisiana Contracts Clause to the Federal Contracts clause. [13] The Louisiana and federal Contracts clause are now virtually identical" and "substantially equivalent." *Segura v. Frank*, 630 So.2d 714, 728 (La.1994). The earlier version of Louisiana's Contracts Clause has been cited by at least one Louisiana court as "[t]he basis for rule that even remedial statutes should not be construed to operate retroactively where vested rights are impaired." *American Finance Corp. of Coushatta, Inc. v. Small*, App. 2 Cir.1971, 250 So.2d 768.

Without any provision in the constitution which would explicitly prohibit the Legislature from enacting laws that divest citizens of vested rights, the constitutional challenge to such a law would fall under the umbrella of Louisiana's Due Process Clause.

## B. LOUISIANA'S DUE PROCESS CLAUSE IS COMMENSURATE WITH THE FEDERAL DUE PROCESS CLAUSE

Louisiana's due process guarantee in La. Const. Art. I, § 2 states that "[n]o person shall be deprived of life, liberty, or property, except by due process of law." The Louisiana Supreme Court has explained that the Louisiana and Federal Due Process Clauses are "nearly identical in language," and has expressly found "the two clauses to be coextensive and to provide the same due process protection." *Louisiana v. Smith*, 614 So.2d 778, 780 (La.App. 2 Cir.1993). The analysis as to whether an action violates the due process clause is the same

---

13 Under the version of the Louisiana Constitution passed in 1921, Article IV Section 15 entitled "Ex-post facto law; law impairing obligation of contract; divestment of vested rights" stated "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested right be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." See Haas v. Haas, 182 La. 337, 340, 162 So. 5, 6 (1935) (quoting the language directly from the constitution). Article IV Section 15 in this version of the constitution was considered to be the corollary to Article 1 of the Constitution of the United States. See Hibernia Mortg. Co. v. Greco, 191 La. 658, 664, 186 So. 60, 62 (1938) (identifying Section 15 of Article 4 of the Constitution of Louisiana as the "corresponding clause" to the contracts clause in Article 1 of the Constitution of the United States.). Then in 1974 Louisiana adopted a new Constitution. Louisiana's contract clause was edited to remove the language prohibiting the divestiture of vested rights. The clause was moved to Article 1 Section 23 entitled "Prohibited Laws" which now reads "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.

under either constitution. *Robinson v. St. Tammany Par. Pub. Sch. Sys.,* 983 F. Supp. 2d 835, Fn. 64 (E.D. La. 2013), aff'd, 569 F. App'x 303 (5th Cir. 2014). "Consequently, federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2 's due process protection." *Fields v. State Through Dep't of Pub. Safety & Corr.,* 98-0611 (La. 7/8/98), 714 So. 2d 1244, 1250.

Due process is "an elusive concept" whose "exact boundaries are undefinable, and its content varies according to specific factual contexts." *Mary Moe, L.L.C. v. Louisiana Bd. of Ethics*, 2003-2220 (La. 4/14/04), 875 So. 2d 22, 31. It is flexible and calls for such protections as the particular situation demands. *Fields v. State Through Dept. of Public Safety and Corrections*, La.1998, 714 So.2d 1244, 98-0611 La. 7/8/98.

## C. THE RIGHT TO DUE PROCESS MUST GIVE WAY TO VALID EXERCISES OF THE STATES POLICE POWER.

"Balanced against this substantive due process right, however, is the police power of governing authorities." *State v. Edwards*, 2000-1246 (La. 6/1/01), 787 So. 2d 981, 992. The states "police power" is defined as "the authority of a governmental body to reasonably regulate the actions of its citizens in order to protect or promote the health, safety, morals, peace or general welfare." *City of Lake Charles v. Henning*, 414 So. 2d 331, 333 (La. 1982). "It is well settled that everyone holds his property subject at all times to every valid exercise of the police power." *Ransome v. Police Jury of Par. of Jefferson*, 216 La. 994, 1002, 45 So. 2d 601, 603 (1950). "Both persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, welfare, and prosperity of the people of the state" and "everything contrary to public policy or inimical to the public interest is the subject of the exercise of the power." *Schwegmann Bros. v. Louisiana Bd. of Alcoholic Beverage Control*, 216 La. 148, 169, 43 So. 2d 248, 255 (1949)

"The state's police power is the very soul and essence of its sovereignty" because if the "court by its

decision could limit perpetually the police power of the state, it could destroy the state itself." *State ex rel. Porterie v. Walmsley*, 183 La. 139, 175, 162 So. 826, 837 (1935). "The states have a wide discretion to determine when and in what circumstances they will exercise their police power and the courts will not interfere except in cases of clear and arbitrary abuse." *Goltzman v. Rougeot*, 122 F. Supp. 700, 703 (W.D. La. 1954). "The state's police power cannot be bartered away" and "the clauses of the constitution guaranteeing due process of law and vested on contract rights against impairment, have always yielded to its proper exercise." *McGee v. Police Jury of Caddo Par.*, 66 So. 2d 408, 412 (La. Ct. App. 1953), aff'd, 225 La. 471, 73 So. 2d 424 (1954).

### D.    <u>STATUTES ARE PRESUMED TO BE CONSTITUTIONAL</u>

Statutes enacted by the legislature are "presumed constitutional, and any doubt is to be resolved in the statute's favor." *State v. Weaver,* 2001-0467 (La. 1/15/02), 805 So.2d 166, 170. The presumption is especially forceful in the case of statutes enacted to promote a public purpose. *Polk, et al v. Edwards*, et al., 626 So.2d 1128, 1132 (La. 1193). Legislators are "presumed to have weighed the relevant constitutional considerations in enacting legislation.". *Greater New Orleans Expressway Commission v. Olivier*, 04-2147 (La. 1/19/05), 892 So.2d 570, 573. The court "must construe a statute so as to preserve its constitutionality when it is reasonable to do so." *M.J. Farms, Ltd. V. Exxon Mobil Corporation*, 2007-2371 (La. 7/1/08), 998 So. 2d 16, at 31 *amended on reh'g* (Sept. 19, 2008).

The party challenging the statute bears the burden of proving it is unconstitutional clearly and convincingly. *State v. Brenan*, 99-2291 (La. 5/16/00), 772 So.2d 64, 67; see also *Hite v. Larpenter*, 04-1821 (La. App. 1 Cir. 9/23/05), 923 So.2d 140, 145, *writ denied*, 05-2255 (La. 3/10/06, 925 So.2d 511. The challenger must establish that no circumstances exist under which the act would be valid. *City of New Orleans, v. La. Assessors' Retirement & Relief Fund*, 2005-2548 (La. 10/1/07), 986 So.2d 1, 2-3.

E.     **THE RATIONAL BASIS TEST WILL APPLY TO UNDER A SUBSTANTIVE DUE PROCESS ANALYSIS.**

In the area of substantive due process, courts look only to see if a particular legislative measure was a rational way to correct a problem. *Hayden v. Louisiana Pub. Serv. Comm'n*, 553 So. 2d 435, 440 (La. 1989). "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate governmental objective." *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174–75 (5th Cir. 1996). If the question is at least debatable, there is no substantive due process violation. *Id.*

The legislation does not violate substantive due process if it withstands rational basis review. *State v. Brown,* 94-1290 (La. 1/17/95), 648 So.2d 872, 877. "It is well settled that the substantive guarantee of due process in the federal and state constitution requires only that the legislation have a rational relationship to a legitimate state interest." *Id* at 877. "It is equally well settled that an ordinance will be upheld if there exists a reasonable relationship between the law and public good." *Id.* "Stated another way, the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole". *Everett v. Goldman,* 359 So.2d 1256, 1268 (La. 1978).

The Louisiana Supreme Court has recognized that "[p]rivate rights must always yield to the public good." *Board of Barber Exam'rs of La. v. Parker,* 190 La. 214 (1938), 182 So. 485, 490. In cases "involving general police power or social welfare legislation … the test of substantive due process is whether the regulation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole." *Bazley v. Tortorich*, 397 So. 2d 475, 483 (La. 1981).

The vested right to assert a defense of prescription is not a fundamental right. Prescriptive statutes in general are somewhat of a public welfare or economic tradeoff, permitting injured plaintiffs time to access the court for redress, while at the same time, affording defendants "economic and psychological security if a cause

of action is not pleaded timely and to protect the defendant from state claims and loss of proof." *Biggs v. Hatter,* 45-066 (La. App. 2 Cir. 3/3/10), 32 So.3d 355, 361. For example, in the Workmen's Compensation Act, "the injured worker is guaranteed a certain amount of compensation without having to file a tort claim" and "the employer is relieved of the incalculable liability that might have been incurred without the worker's compensation system." *Desselle v. Liberty Mut. Ins. Co.,* 482 So.2d 1009, 1012 (La. App. 3 Cir. 1986).

Defendants cite no cases in support of their contention that the Court need not apply the rational basis test or any alternative level of constitutional scrutiny. They simply point out that some other cases past cases have not undertaken to perform such scrutiny. But it is hardly surprising that the Court wouldn't always perform a full constitutional analysis given the longstanding precedent that the Court "should not generally reach determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case." *White v. West Carroll Hospital, Inc.*, 613 So.2d 150, 157 (La.1992). To the extent those other cases could be decided without applying one of the constitutional scrutiny tests, it was right for the Court to avoid them.

F. **DEFENDANTS HAVE THE BURDEN TO PROVE THAT THE LOOKBACK WINDOW IS UNCONSTITUTIONAL.**

"[O]ne who claims a violation of due process of law must show that the statute or ordinance exceeds the bounds of reasonableness because it is arbitrary or oppressive." *City of Lake Charles v. Henning*, 414 So. 2d 331, 333 (La. 1982). The challenger "must convince the court that the legislative facts on which the [decision] is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 175 (5th Cir. 1996).

In order to prove a violation of substantive due process, a party must first establish the existence of a constitutionally-protected property or liberty interest. *State v. Bazile*, 2012-2243 (La. 5/7/13), 144 So.3d 719,

730; *Oliver v. Orleans Parish School Bd.*, 2014- 0329, 2014--0330 (La. 10/3 l/1), 156 So.3d 596. 629-30.

"Once that interest has been established, a violation of substantive due process still requires arbitrary and capricious conduct by the governing authority." *Barber v. Louisiana Workforce Comm'n*, 2017-0844 (La. App. 1 Cir. 10/19/18), 266 So. 3d 368, 382, writ denied, 2018-1878 (La. 2/18/19), 264 So. 3d 451

## X.    THE LOUISIANA LEGISLATURE HAS THE POWER TO REVIVE PREVIOUSLY PRESCRIBED CAUSES OF ACTION

### A.    THE RIGHT TO ASSERT PRESCRIPTIVE PERIODS IS NOT A FUNDAMENTAL RIGHT.

The shelter afforded by prescription statutes is not a fundamental or natural right and though litigants may have protection of the public policy represented thereby while it exists, pleas of limitation are good only by legislative grace and are subject to relatively large degree of legislative control. *U.S. v. Nebo Oil Co.*, W.D.La.1950, 90 F.Supp. 73, affirmed 190 F.2d 1003. "Statutes of limitation ... are by definition arbitrary". *Picone v. Lyons*, 601 So. 2d 1375, 1376 (La. 1992) (citing *Chase Securities Corp. v. Donaldson*, 325 U.S. 304 at 314, 65 S.Ct. 1137 at 1142, 89 L.Ed. 1628 at 1635 (1945). "They have come into the law not through the judicial process but through legislation" and "[t]hey represent a public policy about the privilege to litigate." *Id*. "Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual." *Id*. "Prescription as a bar to an action on an obligation is a defense provided by law," and "[t]he legislature, in its wisdom, may grant, withhold, qualify or restrict the right to such a defense as it sees fit. *Davis v. Contorno*, App.1970, 234 So.2d 470, affirmed 190 F.2d 1003.

## B.   DEFENDANTS FAIL TO GIVE PROPER EFFECT TO THE SUPREME COURT'S ANALYSIS IN *CHANCE V. AM. HONDA*, 635 SO.2D 177 (LA. 1994).

### i.   *CHANCE* SETS FORTH THE TEST FOR DETERMINING IF THE LEGISLATURE INTENDED TO REVIVE A PRESCRIBED CLAIM

In its ruling on *Chance*, the Louisiana Supreme Court ruled that for a statute to be applied retroactively to infringe on an alleged vested property right, the law must include a "a clear and unequivocal expressions of intent." *Id* at 178.  The Supreme Court stated:

> The matter before us presents a different question: **does the retroactive application referred to in article 6 extend to revive previously time barred causes of action.**  Although prescriptive statutes are generally procedural in nature, the revival of an already prescribed claim presents additional concerns.  For while the defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the legislature grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. La. Code Civ. P. arts 927 & 934.  Because the defendant acquires the right to plead the exception of prescription, a change in that right constitutes a substantive change in the law as applied to the defendant, *See St. Paul Fire & Marine Inc. Co., v. Smith,* 609 So.2d 809, 817 (La. 1992) ("Substantive laws either establish new rules, rights, and duties or change existing ones."); *Thomassie v. Savoie,* 581 So.2d 1031, 1034 (La. App. 1st Cir. 1991) ("[i]f a statute which is remedial or procedural also has the effect of making a change in the substantive law, it must be construed to operate prospectively only").  Thus, were we to interpret the amendment at issue to allow the revival of prescribed causes of action, the substantive rights of the defendant would be materially changed because he would be stripped of this acquired defense.  Guided by the principles established in article 6, **we require, at the very least, a clear and unequivocal expressions of intent by the legislature for such an "extreme exercise of legislative power."**

*Chance v. Am. Honda Motor Co.,* 635 So.2d 177, 178 (La. 1994) *(emphasis added).*

In *Chance*, because the language in the statute at issue "[did] not contain any reference to retroactive application, much less revival of prescribed claims" the Court found that there was no clear expression of intent

to revive prescribed claims. *Id* at 179.

The Louisiana Supreme Court subsequently reaffirmed and applied the *Chance* test in 1997 when it considered a constitutional challenge to a legislative act which altered prescriptive statutes regarding asbestos claims. *Cameron Par. Sch. Bd. V. ACandS, Inc.,* 96-0895 (La. 1/14/97), 687 So.2d 84, 91. The *Cameron* court stated that *Chance* sets forth "the test for determining whether the legislature intended an Act to revive prescribed causes of action." *Id*. It went on to explain that there is an important distinction to be made between a legislature expressing intent for a prescriptive statute to operate retroactively (which was expressed in the law at issue in *Cameron*), as opposed to an expression of intent to disturb potentially vested rights by reviving previously prescribed claims (which was lacking in both *Chance* and *Cameron*). Id at 91. They specifically pointed to the fact that the statute "does not contain any reference to revival of prescribed claims." *Id*. Because the statute did not pass the *Chance* test, the *Cameron* court declined to apply it retroactively. *Id*.

*Chance* remains good law that stands on its own. It has been re-affirmed by the Supreme Court and followed by every intermediate appellate court in the State, including the Fourth Circuit.[14]

---

14 *Home Bank v. Marcello,* 2017-0281 (La. App. 4 Cir. 10/18/17), 316 So.3d 1161, 1166 (quoting the above language in *Chance*); *Kelleher v. Custom Homes By Jim Fussell, Inc.,* 2015-1798 (La. App. 1 Cir. 6/3/16) ("guided by the principles established in La. C.C. art 6, the court in *Chance . . .*"); *In re Succession of James,* 2007-2509 (La./ App. 1 Cir. 8/21/08), 994 So.2d 120, 123, *writ denied,* 2008-2302 (La. 12/12/08), 996 So.2d 1119 ("Based on its analysis and finding that the legislature had no provided a clear expression of any intent to make the change in a prescriptive article, retroactive, *Chance* held that the barred action could not be revived."); *In re Succession of Faget v. Faget,* 2005-1434 (La. App. 1 Cir. 6/9/06), 938 So.2d 1003, 1007, *writ denied sub nom. Succession of Faget v. Faget* 2006-1719 (La. 11/9/06), 941 So.2d 40 (explaining and then following the holding in *Chance*); *Matter of Brinkman,* 98-0159 (La. App. 4 Cir. 8/5/98), 717 So.2d 681, 682 (explaining, quoting, and following *Chance* and reasoning "absent a clear and unequivocal expression of legislative intent to apply a prescriptive statute to revive a cause of action, the Supreme Court declined to retroactively apply the statute or address the legislature's authority to revive a cause of action"); *Gaffney for Succession of Regan v. JPMorgan Chase Bank, N.A.,* No. CV 16-802-SDD-RLB, 2018 WL 3717109, at *5 (M.D. La. July 31, 2018) (restating quoting the above *Chance* quote); *Succession of Pelt,* 2017-860 (La. App. 3 Cir. 4/11/18), 244 So.3d 476, 484 (*citing Chance* for the proposition: "Once a party acquires the right to plead prescription, a statute cannot apply retroactively to revive a prescribed cause of action, absent clear language of the legislature as to the retroactive application of the statute."): *Holland v. Holland,* 2017-231 (La. App. 3 Cir. 11/2/17) (following *Chance's* analysis and finding that the statute at issue "is silent as to its retroactive or prospective effect); *Succession of Pelt,* 2017-860 (La. App. 3 Cir. 4/11/18) 244 So.3d 476, 484; *Succession of Younger,* 50-876 (La. App. 2 CIR. 9/28/16), 206 So.3d 1088, 1091, *writ denied,* 2016-2202 (La. 1/25/17), 215 So.3d 685 (*citing Chance* for the proposition that "once a party acquires the right to plead prescription, a statute cannot apply retroactively to revive a prescribed cause of action, absent clear language of the legislature as to the retroactive application of the statute");

At least one other court has applied *Chance's* analysis to retroactively apply a statute to revive what would have otherwise been a prescribed cause of action: "It is clear that the legislature intended that the removal of the two-year prescription period for an annulment of an acknowledgement of paternity apply completely and, therefore, retroactively." *Barras v. O'Rourke,* 2019-412 (La. App. 3 Cir. 12/18/19), 287 So.3d 817, 821. The Barras court applied the Chance test for determining whether a prescriptive statute was intended to revive prior claims and determined based off of a revision comment to the statute "that the legislature intended to completely remove prescription in these cases, and therefore, to apply the amendment retroactively to revive any already prescribed causes of action." *Id* at 820. The court declared the Plaintiff's claim revived in accordance with the legislative intent. *Id.*

The Louisiana Supreme Court has previously upheld the constitutionality of other statutes that retroactively made substantive changes to vested rights when the Legislature expressed a clear intent to do so. In 2006, the Louisiana Supreme Court addressed the constitutionality of newly passed statutes which extended prescriptive periods for filing property insurance claims arising from Hurricanes Katrina and Rita. *State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State,* 2006-2030 (La. 8/25/06), 937 So.2d 313. Defendants challenged the constitutionality of these statutes under the Contract Clauses of the Louisiana and United States Constitutions. The Court determined that "the acts clearly indicate the legislature's intent that their provisions be applied both retroactively and prospectively for the types of claims described therein." *Id* at 322. The Court held that because the statutes were "substantive in nature" they thus raised concerns under both

---

*Meaux v. Guidry,* 2014-155 (La. App. 3 Cir. 6/4/14), 140 So.3d 874, 874, *writ denied,* 2014-1389 (La. 10/3/14), 149 So.3d 799 (favorably quoting *Chance* "Guided by the principles established in [La. Civ. Code] article 6, we require, at the very least, a clear and unequivocal expression of intent by the legislature for such an "extreme exercise of legislative power."); *Thomas v. Roberts,* 47-411 (La. App. 2 Cir. 9/26/12), 106 So.3d 557, 560 (quoting and following *Chance's* above analysis); *Henry v. SBA Shipyard, Inc.,* 2009-426 (La. App. 3 Cir. 11/10/09), 24 So.3d 956, 961, *writ denied,* 2009-2693 (La. 2/12/10), 27 So.3d 853 (same); *Morgan v. Louisiana Dep't of Pub. Safety & Corr.,* 2008-750 (La. App. 3 Cir. 12/10/08), 24 So.3d 208, 211, *on reh'g* (Nov. 25, 2009), *writ denied,* 2009-2834 (La. 3/5/10), 28 So.3d1012 (same); *In re Succession of McKay,* 2005-603 (La. App. 3 Cir. 2/1/06), 921 So.2d 1219, 1223, *writ denied,* 2006-0504 (La. 6/2/06), 929 So.2d 1252, and *writ denied,* 2006-0631 (La. 6/2/06), 929 So.2d 1253 (same); *State v. Lee,* 31-859 (La. App. 2 Cir. 2/24/99), 728 So.2d 1042, 1045 (same). Even the Supreme Court of Iowa has cited *Chance* for the proposition that to retroactively apply a statute

the Due Process and Contracts Clause. *Id* at 322-323.

The Court there specifically quoted the same facially absolute language which appears over and over again throughout Defendants' Motion to Dismiss: "'Even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights.'" *Id* at 322 (citing e.g., *Morial v. Smith & Wesson Corp.*, 2000–1132 p. 7 (La.4/3/01), 785 So.2d 1, 10). The Court then immediately went on to apply the substantive law retroactively in a way which impaired contractual obligations. The Court was clearly well aware of the entire line of cases throughout Louisiana's history making similar absolute pronouncements but did not find them binding. *Id*.

After noting the compelling language from *Chance*, the Court explained that "although the language of these constitutional clauses appears unambiguously absolute" the "prohibition contained in the Contract Clause 'must be accommodated to the inherent power of the state to safeguard the vital interests of its people'" *Id* at 322-323 (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983)). The Court found that the statutes substantially impaired Defendants contractual rights, but after applying a constitutional scrutiny analysis regarding the reasonableness of the statute and legitimacy of the public purpose behind it, they ultimately upheld the constitutionality of these acts as constitutional under the Contract Clause. *Id* at 326-327. Although the Defendants there had not explicitly raised the substantive due process challenge, the Court noted that:

> Insofar as the defendant insurers claim imposition of the extended prescriptive period violates constitutional due process concerns, our conclusion that no unconstitutional violation occurred would be the same because the tests are similar. The Supreme Court has held '[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process': a legitimate legislative purpose furthered by rational means.

---

to revive a prescribed claim, the court needs to look for explicit legislative intent. *Frideres v. Schiltz*, 540 N.W.2d 261, 267 (Iowa 1995).

*State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed To Do Bus. In State,* 2006-2030 (La.

8/25/06), 937 So.2d 313. (citing *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112,

117 L.Ed.2d 328 (1992)).

    **ii.**       **ACT 322 PASSES THE *CHANCE* TEST**

Act 322 does provide a "clear and unequivocal" expression of intent as required by *Chance*. Its

Lookback Window states: "It is the intent of the legislature to revive for a period of three years any claim

against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act". La. Rev.

Stat. 9:2800.9 *(comment) (amended 6/14/21) (emphasis added).* As discussed above, the legislative history

further confirms that the legislature specifically intended to revive previously prescribed claims.

Judge Laurie A. Hulin of the Fifteenth Judicial District Court in Lafayette Parish recently ruled on this

exact issue and upon applying the *Chance* test, she held that "Act 322 has a clear and unequivocal expression

of the intent… to revive causes of action which have prescribed under the law existing prior the statues

enactment." *Sam Doe vs. Society of the Roman Catholic Church*, No. 20204792, (15th J.D.C. Jan. 19, 2022).

*See Exhibit "5".*

Defendants cited caselaw does not undermine the *Chance* test or cite to any other Supreme Court

caselaw that overrules or criticizes *Chance*. Critically, Defendants were not able to point to a single case in

which the Legislature passed a law in which it clearly an unequivocally expressed an intent to revive prescribed

causes of action and the statute was subsequently overruled as an unconstitutional divestiture of a vested right to

assert prescription. The cases that are ultimately relied upon by Defendants nearly all contain one or more of

the following distinct contrasts to the case at bar: (1) the legislature made no declaration of intent regarding

retroactivity (2) the legislature made a general declaration of intent regarding retroactivity, but did not specify

that it intended specifically to revive previously prescribed claims; (3) the statute at issue was determined to be

procedural and therefore no vested rights were at issue; (4) the case involved retroactive extinguishment or divestiture of a plaintiff's vested cause of action – an issue which is clearly distinct since prescription is procedural by nature but creation of a cause of action is substantive by nature; or (5) the legislature expressed an intent for the law to apply retroactively, but stated that the law being passed was merely interpretive and therefore did not affect any substantive rights.

The Defendants rely heavily on *Bourgeois v. A.P. Green Indus., Inc.*, 001-1528 (La. 4/3/01); 783 So.2d 1251, (hereinafter, *Bourgeois II*) for the proposition that the legislature cannot make a law retroactive if it affects vested property rights. There, the issue involved the legislature passing Act 989 which amending Article 2315 to specify that certain damages could not be covered under Article 2315 "unless it is related to a manifest physical or injury or disease." *Id.* Act 989 was a direct response to an earlier Louisiana Supreme Court decision (*Bourgeois v. A.P. Green Indus., Inc.*, 97–3188 (La.7/8/98); 716 So.2d 355) (hereinafter, *Bourgeois I*) in which the Court held that asymptomatic employees who had been exposed to asbestos were entitled under Article 2315 to damages for medical monitoring. In enacting Act 989, the legislature specifically stated, "[t]he provisions of this Act are interpretative of Civil Code Article 2315 and are intended to explain its original intent, notwithstanding the contrary interpretation given in [*Bourgeois I*], and all cases consistent therewith." Id at 1255. The Act also stated that it was "applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date." *Id.* The court in *Bourgeois II* ultimately held Act 989 unconstitutional as it applied to claims which were already pending when Act 989 passed. *Id.*

*Bourgeois II* is distinguishable from the case at bar both because it involves a plaintiff's right to bring a claim rather than a defendant's right to assert prescription, but also because the Legislature there did not provide an expression of legislative intent to actually impair vested property rights as would be required by *Chance*. Instead, the Legislature essentially skirted the issue by saying that Article 2315 had always

excluded coverage for the claims at issue and therefore there was no vested right for such claims. Id at 1255.

*Church Mut. Ins. Co. v. Dardar*, 2013-2351 (La. 5/7/14), 145 So.3d 271, 279 n.10 & 281 is also inapplicable here because it involved discussion of the constitutionality of a statute attempting to retroactively apply procedural changes in the handling of workers compensation cases. The court there determined that it was procedural and thus did not impair vested property rights since no one has a vested property right in any given mode of procedure. *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 2007-2371 (La. 7/1/08), 998 So.2d 16 amended on reh'g (Sept. 19, 2008) is also inapplicable here because the court there determined that the law at issue was procedural in nature and therefore did not disturb vested rights.

*Burmaster v. Plaquemines Par. Gov't*, 2007-2432 (La. 5/21/08) 982 So.2d 795, 807 is also inapplicable because it involves a case where the Louisiana Legislature passed a law intending to retroactively extinguish a Plaintiff's right to bring an entire category of causes of action entirely. The legislature had indeed expressed an intent to apply the law retroactively, but the plaintiffs, who had already filed their class action lawsuit prior to the law being passed, argued that it would be unconstitutional to apply it to them after they had already filed suit. Id. Relying on *Bourgeois II* which also involved a plaintiff's right to bring a cause of action, the Court held that the statute in question was unconstitutional only so far as it applied to the plaintiffs in that particular case where plaintiffs' claims "had accrued, been filed, and were pending prior to the effective date of the provision." *Id* at 811.

**C.    IF SECTION 2800.9 VIOLATES OR LIMITS HOLY CROSS' RIGHT TO DUE PROCESS, THEN THE PROPER ANALYSIS IS TO DETERMINE WHETHER THIS LIMITATION COMPORTS WITH RATIONAL BASIS REVIEW.**

If the court determines that the Lookback Window does divest Defendants of a constitutionally protected property right, the next step is to determine whether the defendant's substantive due process rights

were indeed violated. In order to establish a violation of substantive due process, the Defendants must show that the deprivation of property at issue was arbitrary and capricious. *Coxe Property Management and Leasing v. City of New Orleans*, 2019-0911 (La. App. 4 Cir. 4/8/20), 294 So.3d 1098, 1104 (citing *Boudreaux v. Larpenter*, 2011-0410 (La. App. 1 Cir. 6/11/12). 110 So.3d 159, 170.) To determine this, the court will look to the rational basis test to determine whether the government action is "rationally related to a legitimate governmental interest." *Id*.

In this case, the Lookback Window is clearly motivated by a legitimate government interest. The clear purpose of the statute was to provide for the public welfare by expanding access to justice for Survivors and in doing so to prevent future sexual abuse of children by holding abusers and those who enable them accountable. The United States Supreme Court has recognized that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *United States v. Ferber*, 458 U.S. 747, 757 (1982).

The Lookback Window is also specifically "rationally related" to those stated government interests as well. The one-time three-year only revival of a very narrow class of torts for against a specific class of defendants is unquestionably rationally related to a legitimate government interest. It is in fact even narrowly tailored to a compelling one.[15] The *only* way to do this is to ensure justice for Survivors is to ensure that for a limited time, those who were unable or unwilling to come forward when they were scarcely more than children

---

[15] Not only is this legislation rationally related to a legitimate government interest, but even if Holy Cross would like to argue that its vested prescription right is a fundamental one, this legislation targeted at prescription only for victims of sexual abuse under a specific statute is "narrowly tailored" to a "compelling state interest". *Reno v. Flores,* 507 U.S. 292, 302 (1993).

will be given a second chance. The same type of laws have been successfully benefited the public in dozens of other states across the country.

**D.      THE REVIVAL CLAUSE DOES NOT VIOLATE THE BILL OF ATTAINDER.**

Holy Cross has also suggested that the statute represents a "Bill of Attainder" which is prohibited by the United States and Louisiana Constitutions.  Holy Cross's argument misunderstands the purpose and elements of this constitutional principle.  First, the prohibition of a Bill of Attainder arises out of the "Contract Clauses" of the respective Constitutions, and historically involved extreme criminal violations. Second, the revival clause does not single out any specific group. Third, the prohibition on Bills of Attainder is to prevent the "infliction of punishment", usually for criminal behavior, not the removal of a procedural defense like prescription. Fourth, even assuming, *arguendo,* that the revival clause violated the bill of attainder, it nonetheless is rationally related to the governmental interest of protecting children, remedying the sexual assault of minors, and providing for an opportunity of justice for those long-ago sexually abused as minors.

> Bills of attainder… are such special acts of the legislature, as inflict capital punishments upon persons supposed to be guilty of high offenses, such as treason and felony, without any conviction in the ordinary course of judicial proceedings.  If an act inflicts a milder degree of punishment than death, it is called a bill of pains and penalties.  In such cases, the legislature assumes judicial magistracy, pronouncing upon the guilt of the party without any of the common forms and guards of trial, and satisfying itself with proofs, when such proofs are within its reach, whether they are comfortable to the rules of evidence, or not.  In short, in all such cases, the legislature exercises the highest power of sovereignty, and what may be properly deemed an irresponsible despotic discretion, being governed solely by what it deems political necessity or expediency, and too often under the influence of unreasonable fears, or unfounded suspicions.

3J Story, Commentaries on The Constitution of The United States 1338 (1833).

Furthermore,

> The prohibition embodied in this clause is to not be narrowly construed in the context of traditional forms but is to be interpreted in accordance with the designs of the framers so as to preclude trial by legislature, which would

45

violate the separation of powers. The clause thus prohibits all legislative acts, "no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.

*United States v. Lovett,* 328 U.S. 303, 315 (1946).

"Both 'specificity' and 'punishment' must be shown before a law is condemned as a bill of attainder".

*Foretich v. US.,* 351 F. 3d 1198, 1217 (D.C. Cir. 2003). The issue raised at present does not rise to the level of the legislature establishing judicial magistracy or as "trial by the legislature". Our Supreme Court has addressed a similar Bill of Attainder argument made against the extension of a prescription statute thus:

> Although the language of these constitutional clauses appears unambiguously absolute, the Contract Clause does not operate to obliterate the police power of the States.
>
> It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the commonwealth, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which, in its various ramifications, is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.
>
> Thus, the prohibition contained in the Contract Clause must be accommodated to the inherent power of the state to safeguard the vital interests of its people.

*State v. All Prop. and Cas. Inc., Carriers,* 937 So.2d 313, 323-24 (La. 2006) *(citations omitted).*

Second, to be a prohibited law under a Bill of Attainder it must specifically address a group and must have a punitive purpose. The revival clause does neither. Holy Cross suggests that the statute is a sanction without a trial against specified persons. On the Contrary, the statute does not single out or specify an organized group. More importantly, the statute in question does not in any way punish a person or group of persons without a trial. The resulting pursuit of a claim under the present statute against a party is not punitive. There is no punitive language in the statute whatsoever. The statute provides a remedy that, if proven at a trial,

would result in the recovery of damages, which is no different than any other tort in Louisiana.

If there were any merit to the argument that a statute providing a mechanism for injured plaintiffs to receive compensation was "punitive" by nature, then every act under LSA-C.C. art. 2315 would have to be considered a punitive.

The revival clause does not seek to "inflict punishment" on any alleged group. Rather, the revival clause merely removes the procedural defense of prescription. Any alleged "right" that Holy Cross alleges to have accrued to its benefit is nothing more than the passage of time. There can be no infliction of punishment when Holy Cross is still entitled to a jury trial on the merits to present whatever evidence or argument. Since Holy Cross has failed to show the specificity of its organization as being targeted and has also failed to establish that the statute is punitive in nature, the Bill of Attainder argument should be rejected.

Fourth, the revival clause is rationally related to the legitimate state interests of promoting morals and the general welfare of the people of Louisiana and those harmed in the past. The state has a legitimate interest in protecting children, deterring the sexual abuse of minors, and encouraging justice for survivors of childhood sexual assaults. *See Foretich v. United States,* 351 F.3d 1198, 1222 (D.C. Cir. 2003) ("[T]o avoid designation as a bill of attainder, a statute that burdens a particular person or class of persons must serve purposes that are not only nonpunitive, but also rational and fair.").

## <u>CONCLUSION</u>

The Defendants motion to dismiss is devoid of merit. This Honorable Court should accordingly deny Defendants' motion.

Respectfully submitted,

*/s/ Kristi S. Schubert*
FRANK E. LAMOTHE, III, T.A. (#07945)
KRISTI S. SCHUBERT (#34870)
JULIEN G. LAMOTHE (#38313)
**LAMOTHE LAW FIRM, LLC**
400 Poydras Street, Suite 1760
New Orleans, LA 70130
Telephone: (504) 704-1414
E-Mail: felamothe@lamothefirm.com
      kschubert@lamothefirm.com
      jlamothe@lamothefirm.com

*Attorneys for Plaintiff, John Lousteau*

## CERTIFICATE OF SERVICE

I certify that on March 21, 2022, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to counsel for all parties by operation of the CM/ECF system.

*/s/ Kristi S. Schubert*
KRISTI S. SCHUBERT