UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN LOUSTEAU

CIVIL ACTION

VERSUS

NO: 21-1457

CONGREGATION OF HOLY CROSS
SOUTHERN PROVINCE, INC., ET
AL.

SECTION: "A" (4)

## ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 22)**

filed by Defendants, Congregation of Holy Cross, Moreau Province, Inc. and Holy Cross

College, Inc. (hereinafter collectively and in the singular "Holy Cross"). Plaintiff, John

Lousteau, opposes the motion. The motion, submitted on March 30, 2022, is before the

Court on the briefs without oral argument.

## I.      BACKGROUND

The plaintiff, John Lousteau, has filed suit against Holy Cross to obtain damages

for injuries that he claims to have suffered as a result of sexual abuse by a brother and

society member formerly employed by Holy Cross. The alleged abuse occurred in 1968

or 1969, and the perpetrator is identified as Brother Stanley Repucci.[1]  Lousteau was 10

or 11 years old in 1968 or 1969. (Rec. Doc. 1, Original Complaint ¶ 11). Lousteau alleges

that Repucci abused him on two separate occasions (the details of what allegedly

occurred are described in the Original Complaint) during a summer camp at Holy Cross

School in New Orleans. (Original Complaint ¶ 11). Brother Repucci was a teacher at the

---

[1] The Original Complaint identifies the perpetrator as "Brother S.R." The Amended
Complaint identifies Brother S.R. as Brother Stanley Repucci. (Rec. Doc. 2, Amended
Complaint). It is the Court's understanding that Brother Stanley Repucci is deceased.
Neither the pleadings nor the memoranda indicate when Repucci died.

school and he monitored a large dormitory during the summer program. (*Id.* ¶ 10). According to Lousteau, the psychological harm that he sustained as a result of the abuse has had devastating and far-reaching effects on him and his life. (*Id.* ¶ 17).

On June 17, 2020, Lousteau participated in a detailed interview with representatives of Holy Cross regarding the sexual abuse that he experienced as a child at the hands of Brother Repucci. (*Id.* ¶ 18). According to the Original Complaint, the Holy Cross representative indicated that the complaint of abuse seemed credible, and promised that an unbiased investigation into Lousteau's allegations would follow. (*Id.* ¶¶ 19, 21). Lousteau claims that the Holy Cross representative also promised that Holy Cross would pay for therapy to help him heal from the effects of the sexual abuse. But when Lousteau tried to act on that latter promise Holy Cross abruptly cut off all communications with him. (*Id.* ¶¶ 22-25).

Lousteau filed the instant civil action against Holy Cross on August 1, 2021. The allegations support diversity jurisdiction in federal court.[2] Lousteau's claim for damages is grounded in tort pursuant to Louisiana Civil Code article 2315. Lousteau alleges fault on the part of Holy Cross and further alleges that Holy Cross is liable under the doctrine of respondeat superior for the acts of Brother Repucci. This is not a case where the plaintiff is alleging delayed recall or repressed memory in order to avoid prescription. Rather, Lousteau contends that via § 2 of Act 322 passed in 2021, the Louisiana Legislature revived his otherwise prescribed claims and therefore his complaint is timely.

---

[2] Lousteau is domiciled in Florida. Both of the Holy Cross defendants are Louisiana citizens. The amount in controversy exceeds the sum $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1) (diversity jurisdiction).

The Court notes that after the motion to dismiss was filed and prior to filing his opposition, Lousteau moved to file a third amended complaint for damages, to raise other potential grounds including *contra non valentem* to avoid a prescriptive bar. (Rec. Doc. 25, Motion for Leave). That contested motion was addressed by the assigned magistrate judge and has been denied. (Rec. Doc. 50, Order). Lousteau did not file an objection to that ruling. Lousteau did, however, include his arguments as to *contra non valentem* in his opposition to this Court, even though this issue was not briefed in the motion to dismiss or mentioned in the Original Complaint.[3]

A jury trial is scheduled for November 7, 2022. (Rec. Doc. 15, Scheduling Order).

On April 7, 2022, the Court granted an unobjected-to motion to temporarily stay discovery (and concomitantly the scheduling order deadlines) until such time as the Court could issue the instant ruling on the motion to dismiss. (Rec. Doc. 46, Order). The Court granted the requested stay in light of the significant and complex threshold legal issues presented in the motion to dismiss. (*Id.*).

Holy Cross now moves pursuant to Federal Rule of Civil Procedure 12(c) to dismiss all claims asserted in Lousteau's complaint as barred by prescription. The parties' arguments are discussed in detail below.

## II.   DISCUSSION

### A.

A Rule 12(c) motion for judgment on the pleadings is functionally equivalent to a

---

[3] As explained below, the Court has not addressed *contra non valentem* as part of this ruling. If Lousteau's claims were not revived by Act 322, then his complaint is prescribed on its face and he bears the burden of establishing that his claim against Holy Cross has not prescribed. *Wells Fargo Fin. La., Inc. v. Galloway*, 231 So. 3d 793, 800 (La. App. 4th Cir. 2017) (citing *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1361 (La. 1992)).

Rule 12(b)(6) motion to dismiss and therefore relies upon the same standards.[4] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citing 5A Wright & Miller, *Fed. Prac. & Pro.* § 1368, at 591 (Supp. 2002)).

In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550, U.S. 544, 555 (2007)).

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d

---

[4] Timing is essentially the difference between the two motions. A Rule 12(b)(6) motion to dismiss must be filed before a responsive pleading, whereas a Rule 12(c) motion for judgment on the pleadings is filed after the pleadings are closed. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); Fed. R. Civ. Pro. 12(b), (c).

690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

## B.

The alleged tortious conduct that forms the basis of Lousteau's claims against Holy Cross occurred in the summer of either 1968 or 1969. It is undisputed that Lousteau's delictual cause of action under Civil Code article 2315 allegedly accrued in either 1968 or 1969.[5] It is also undisputed that prior to 1993 (the significance of this year is explained below), Lousteau's cause of action was subject to a one-year prescriptive period that was not suspended due to Lousteau's minority. *See* La. Civ. Code art. 3492 cmt. (b). Pretermitting the application of the doctrine of *contra non valentem* which under certain circumstances may delay the commencement of prescription, and assuming that prescription commenced to run when the cause of action accrued in either 1968 or 1969 (the date that the injury or damage is sustained), Lousteau's cause of action against Holy Cross prescribed at some point in 1970 at the latest. The question whether those claims remain prescribed or were revived legislatively depends upon both the validity of Act 322's revival provision in § 2, and assuming that it is valid, the applicability of it to Lousteau's claims.[6]

---

[5] "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315(A).

[6] The viability of the allegations made in the proposed third amended complaint, including the invocation of *contra non valentem*, is not before the Court. The Original Complaint relies solely upon Act 322 and its revival of previously prescribed claims to render the complaint timely under Louisiana law. The Court notes that Lousteau did include a section in his opposition memorandum to explain his theory of how *contra non valentem* might apply to his case. Lousteau asserts that since the time he was molested, he has suffered continuously from post-traumatic stress disorder and other psychological trauma which left him unable to pursue his legal rights until August 1, 2021, when he filed this lawsuit. Lousteau seeks to apply *contra non valentem* to delay

Act 322 effected amendments to La. R.S. § 9:2800.9, entitled Action against a person for abuse of a minor. The Legislature enacted § 9:2800.9 (redesignated from Civil Code article 3498.1) in 1993, and its enactment marked a significant change in the law for the benefit of minor victims of sexual abuse. Beginning in 1993 with the enactment of § 9:2800.9, a civil claim against a person for sexual abuse of a minor became subject to a liberative prescription of ten years instead of the usual one-year period applicable to torts or the three-year period provided in Civil Code article 3496.1.[7] And unlike the ordinary one-year prescriptive period applicable to torts under Article 3492, this ten-year prescriptive period did not commence to run until the day that the minor attained majority.[8]  But the 1993 version of § 9:2800.9 did not apply

---

the commencement of prescription until Act 322 was enacted in 2021, at which point the Legislature prospectively eliminated prescription altogether for childhood sexual abuse claims. Lousteau refers to tacit renunciation in his opposition memorandum but he did not explain how Holy Cross might have renounced prescription, which Holy Cross of course denies.

From this point forward, the Court will ignore the potential application of *contra non valentem* to delay the commencement of prescription, or the possibility of renunciation, and will assume that prescription commenced to run in 1969 at the latest, and that Lousteau's claims did in fact prescribe at some point in 1970. In other words, the Court's ruling today focuses solely on the allegations contained in the Original Complaint to which the motion to dismiss was directed. The Court expresses no opinion on the merits of Lousteau's other proffered bases to avoid the accrual of liberative prescription.

[7] Civil Code article 3496.1, entitled Action against a person for abuse of a minor, was enacted in 1988 and provided for a three-year prescriptive period against a parent or caretaker for abuse of a minor. In 1992 it was amended to apply to "a person," thereby removing the limitation of parent or caretaker. The liberative prescription provided by this article is suspended until the victim attains majority.

[8]  As Lousteau points out, the 1993 enactment meant that survivors typically had until they turned 28 years old to file a lawsuit for childhood sexual abuse. Meanwhile, when HB 492 (which later became Act 322) was introduced in the House, its main sponsor, Representative Jason Hughes, noted that the average age of disclosure for victims of child sexual abuse was 52 years old. (Rec. Doc. 41-2, Exhibit 2 Tr. of 5/3/21 HB 492 at 4).

retroactively, and it did not purport to affect any claims that were already prescribed by the time it was passed into law. Thus, with Lousteau's claim already prescribed since 1970, the enactment of § 9:2800.9 in 1993 did not inure to his benefit.[9]

Immediately prior to its amendment in 2021, Part A of § 9:2800.9 read as follows:

> An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. ***Abuse has the same meaning as provided in Louisiana Children's Code Article 603.*** This prescriptive period shall be subject to any exception of peremption provided by law.

La. Rev. Stat. Ann. § 9:2800.9 (West 2018) (emphasis added).

The definition of "abuse" provided by Louisiana Children's Code article 603 includes "the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person," "***as a result of inadequate supervision***." La. Ch. Code art. 603(2)(a) (emphasis added). The Louisiana Supreme Court had previously considered the pre-2021 version of § 9:2800.9 quoted above, which incorporated the definition of "abuse" from the Children's Code, and had held that it applied to claims against corporations or other juridical (non-natural) persons. *SS v. State of Louisiana*, 831 So. 2d 926 (La. 2002). Thus, the *SS* decision meant that

---

[9] In 1993 the Legislature also enacted Civil Code article 2315.7 which allows for punitive damages in certain circumstances involving criminal sexual activity when the victim is seventeen years old or younger. No one has suggested that this article can apply retroactively to conduct that occurred before its effective date, but even if it did, punitive damages are only available against the perpetrator of the criminal sexual activity. The alleged perpetrator in this case is Brother Repucci not Holy Cross.

claims against an entity like Holy Cross, which was not the actual perpetrator of the alleged abuse, were also subject to the more onerous ten-year prescriptive period applicable to claims for sexual abuse of a minor. But again, with Lousteau's claim already prescribed since 1970, the *SS* decision did not inure to his benefit.

Enter Act 322—the Legislature passed Act 322 in the 2021 regular session. Section 1 of the Act amended § 9:2800.9 such that "[a]n action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring ***does not prescribe***." La. R.S. § 9:2800.9(A)(1) (emphasis added). Section 1 of Act 322 also deleted the reference to the Children's Code for the meaning of "abuse."[10]  No one has suggested that § 1 of Act 322, which rendered claims for sexual abuse of a minor imprescribable, was intended to apply retroactively to claims that had already prescribed.

Thus, for purposes of Lousteau's claims, the Legislature's adoption of § 2 of Act 322 is more significant than the changes effected by § 1. Section 2 of Act 322 did not

---

[10]  The textual changes to Part A of § 9:2800.9 effected by Section 1 of Act 322 may be demonstrated graphically as follows, with the shaded portions denoting newly added text and the strikethrough portions denoting deleted text:

> A. (1) An action against a person for sexual abuse of a minor, or for physical abuse of a minor resulting in permanent impairment or permanent physical injury or scarring, is subject to a liberative prescriptive period of ten years. This prescription commences to run from the day the minor attains majority, and this prescription shall be suspended for all purposes until the minor reaches the age of majority. Abuse has the same meaning as provided in Louisiana Children's Code Article 603. This prescriptive period shall be subject to any exception of peremption provided by law does not prescribe.
>
> (2) An action against a person convicted of a crime against the child does not prescribe and may be filed at any time following conviction. "Crime against the child" has the same meaning as provided in Children's Code Article 603.

become part of § 9:2800.9's text but it provides a "lookback window" to "revive" prescribed claims for a three-year period in order to allow victims whose claims had already prescribed to seek recovery for their injuries. Section 2 of Act 322 reads as follows:

> For a period of three years following the effective date of this Act, ___**any party whose action under R.S. 9:2800.9**___ was barred by liberative prescription prior to the effective date of this Act shall be permitted to file an action under R.S. 9:2800.9 against a party whose alleged actions are the subject of R.S. 9:2800.9. ***It is the intent of the legislature to revive for a period of three years*** <u>***any claim***</u> ***against a party, authorized by R.S. 9:2800.9, that prescribed prior to the effective date of this Act***.

2021 La. Acts 322 (H.B. 492), § 2 (emphasis added).

Act 322 became effective on June 14, 2021.

It does not require a retroactivity analysis under Civil Code article 6 to discern that the Legislature intended for § 2 Act 322 to apply retroactively.[11] After all, a piece of legislation that operates to revive an already-prescribed claim cannot be considered anything but retroactive. Thus, Lousteau's position is that regardless of when his cause of action against Holy Cross prescribed, whether in 1970 or whenever, Act 322 revived it for a period of three years, through June 14, 2024. And since this lawsuit was filed during the three-year lookback window created by § 2 of Act 322, Lousteau contends that his complaint against Holy Cross is timely.

---

[11] Louisiana Civil Code article 6 states: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." *See also* La. R.S. § 1:2 ("No Section of the Revised Statutes is retroactive unless it is expressly so stated.")

**C.**

In its motion to dismiss, Holy Cross raises two multi-faceted arguments as to why Lousteau's claims should be deemed time-barred notwithstanding Act 322's revival mechanism. First, Holy Cross argues that the plain text of Act 322 forecloses the conclusion that the revival provision found in § 2 of Act 322 applies to Lousteau's claims. But assuming that the Court concludes that Act 322's revival provision does apply to Lousteau's claims, Holy Cross's second argument is that reviving Lousteau's already-prescribed claims would be unconstitutional under both the Louisiana and United States Constitutions; in other words, that the revival provision constitutes invalid legislation. Specifically, Holy Cross contends that reviving a prescribed claim violates due process and the prohibition on bills of attainder under the Louisiana Constitution, as well as the prohibition on bills of attainder under the United States Constitution.

With the exception of the bill of attainder argument, which is easily rejected as meritless, the resolution of the parties' arguments involves issues of state law. When evaluating issues of state law, federal courts "look to the final decisions of that state's highest court." *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013) (quoting *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)). In the absence of authority from the Louisiana Supreme Court, this Court must make an *Erie* guess and determine, in its best judgment, how the state Supreme Court would resolve the issue if presented with the same case. *Id.* (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir.2009)); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). State appellate court decisions help guide the *Erie* analysis unless other persuasive data convinces the federal court that the highest court of the state would decide otherwise. *Id.* (quoting

*Mem'l Hermann Healthcare Sys. Inc. v. Eurocopter Deutschland,* 524 F.3d 676, 678
(5th Cir.2008)).

### *Does Act 322's Revival Mechanism Apply to Lousteau's Claims?*

Holy Cross argues that the revival provision narrowly applies only to claims that
were subject to the ten-year prescriptive period of § 9:2800.9, and that prescribed while
that statute was in effect. Holy Cross argues that § 2 of Act 322 does not apply to claims
like Lousteau's that prescribed prior to 1993 when La. R.S. § 2800.9 was first enacted.
In support of this contention, Holy Cross points out that § 2 explicitly revives an "action
under R.S. 9:2800.9" and that § 2 expressly affects claims "authorized by R.S.
9:2800.9." In fact, Holy Cross points out that § 9:2800.9 is specifically referenced four
times in § 2 of Act 322. Holy Cross's position is that the plain text of § 2 evinces the
Legislature's intent to only revive claims that prescribed while La. R.S. § 9:2800.9 was
in effect, and that the Legislature never intended to revive ancient claims like Lousteau's
that prescribed long before § 9:2800.9 was originally enacted in 1993.

Lousteau argues that the revival component of Act 322 revived all causes of
action that had prescribed prior to the passage of Act 322 regardless of when or under
what statute (or civil code article) the claim prescribed.

Under the general rules of statutory construction, the interpretation of any
statutory provision begins with the language of the statute itself. *Billeaudeau v.
Opelousas Gen. Hosp. Auth.*, 218 So. 3d 513, 520 (La. 2016) (citing *McGlothlin v.
Christus St. Patrick Hosp.,* 65 So. 3d 1218, 1227 (La. 2011)). When the provision is clear
and unambiguous and its application does not lead to absurd consequences, its language
must be given effect, and its provisions must be construed so as to give effect to the
purpose indicated by a fair interpretation of the language used. *Billeaudeau,* 218 So. 3d

at 520 (citing La. Civ. Code art. 9; La. R.S. § 1:4; *Milbert v. Answering Bureau, Inc.*, 120 So.3d 678, 684 (La. 2013)). Unequivocal provisions are not subject to judicial construction and should be applied by giving words their generally understood meaning. *Id.* (citing La. Civ. Code art. 11; La. R.S. § 1:3; *Snowton v. Sewerage and Water Bd.*, 6 So. 3d 164, 168 (La. 2009)).

The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. *Red Stick Studio Dev., LLC v. State ex rel. Dep't of Econ. Dev.*, 56 So. 3d 181, 187 (La. 2011) (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 998 So. 2d 16, 27 (La. 2008)). The paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. *Id.*

One particularly helpful guide in ascertaining the intent of the legislature is the legislative history of the statute in question and related legislation. *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 186 (La. 1997) (citing *Malone v. Cannon,* 41 So. 2d 837 (La. 1949)). Laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject. *Id.* (citing *City of New Orleans v. Board of Sup'rs.,* 43 So. 2d 237 (1949)).

There being no decisions from the Louisiana Supreme Court to inform the Court's *Erie* analysis regarding the textual argument raised by Holy Cross, the Court starts with the language of § 2 itself. The Court is not persuaded that the references to § 9:2800.9 evince the intent of the Legislature to limit the revival component to claims that prescribed no earlier than 1993 when § 9:2800.9 was enacted. The last sentence of § 2 clarifies the revival mechanism and it expressly applies to "any claim." The last sentence does not say "any claim that prescribed under prior versions of § 9:2800.9,"

and it does not provide a specific date. Instead, it suggests no limits.

The Court likewise cannot credit Holy Cross's argument that the references in the language of § 2 to an action "under R.S. 9:2800.9" or "authorized by R.S. 9:2800.9" was intended to mean that § 2 only applies to causes of action that prescribed while the statute was in effect and not to those causes of action that prescribed before its enactment in 1993. Section 9:2800.9 does not confer substantive rights upon which to sue; in other words, it does not create a cause of action. The substantive right sued upon or cause of action being asserted is conferred elsewhere, such as in Article 2315. The Court agrees with Lousteau's suggestion that the "under" and "authorized by" language used by the Legislature when referring to § 2800.9 is just a way to refer to claims "against a person for sexual abuse of a minor." Because the lookback window of § 2 is not part of the statutory text of § 2800.9, the references to the statute constitute a convenient way for the Legislature to identify the type of claims being revived; it was not used to narrow the application of the revival component.

But even if the Court were to conclude that § 2 is ambiguous such that the interpretations suggested by Holy Cross are plausible, the legislative history of the 2021 amendments does not support the conclusion that the Legislature intended to limit the lookback window to claims that prescribed after 1993. From Act 322's inception as House Bill 492, it was clear that the Legislature intended to expand—not limit—access to justice for victims of sexual abuse.

When Representative Hughes, HB 492's main sponsor, introduced the bill in committee, he provided a factual recitation in which he noted that the average age of disclosure for victims of child sexual abuse was 52 years old, yet until recently the laws of many states blocked civil lawsuit suits well before the victim turned 51. (Rec. Doc. 41-

2, Exhibit 2 Tr. of 5/3/21 Hearing for HB 492 at 6). As originally proposed, HB 492 would have increased the ten-year (post-majority) liberative prescriptive period to thirty-five years. When questioned about this number in committee, Representative Hughes explained that thirty-five years was proposed specifically because most victims do not come forward until they are roughly 52 years-old on average (18 years at majority + 35 years prescription = 53 years old). (*Id.* at 16). An amendment to reduce the period to twenty years failed. (*Id.* at 42). Many of the adult victims who provided testimony at the committee hearing were of an age such that they would not be able to benefit from the longer prescriptive period because their claims had already prescribed.

When HB 492 reached the Senate, those legislators were convinced that HB 492 did not go far enough. In the Senate Judiciary Committee, the prescriptive period was eliminated altogether. (Rec. Doc. 41-3, Exhibit 3 Tr. of 6/10/21 Hearing for HB 492 at 7). In addition to making the claim imprescribable, § 2 with the lookback window had been added and although it had been five years as originally proposed by Senator Cameron Henry, it was shortened to three years. (*Id.*). When the bill returned to the House, Representative Hughes in attempting to answer questions from other house members about how the lookback window would work, confirmed that it was his understanding that "any victim that is already prescribed out will now have a three year period to come back, if they desire, to file suit . . . ." (*Id.* at 8). When questioned again about how the lookback period would come into play, Representative Hughes explained:

> So again, Representative, if – you know, we have several victims that have already prescribed out, they're well past 28 years old. So, if you've already prescribed out, if this legislation was to pass and be signed into law, you would have a three year period to go back and file a lawsuit . . . ."

*Id.* at 10.

Representative Hughes referred again to the problem with delayed disclosure until mid-life because of mental and emotional issues. (*Id.* at 11). For claims that had already prescribed, there would be no retroactive application of the abolished prescriptive period—in other words, prescription was only eliminated altogether for claims that had not yet prescribed. (*Id.*). But for those claims that were already time-barred, the three-year lookback window would provide a discrete and finite time period during which those victims with prescribed claims could file suit and after that, the window would close and be done. (*Id.*).

Although the bill as amended did pass unanimously, at least one house member noted the concern that by opening up claims from so long ago, evidence may be lost and witnesses may not be available to defend a claim, especially since it is not implausible that an accusation could be made against an innocent person. (*Id.* at 9).

Nothing whatsoever in the legislative history of HB 492 suggested that the Legislature intended to limit the revival period to claims that prescribed after 1993 when § 9:2800.9 was enacted. During the discussion about HB 492, no one mentioned 1993 or even alluded to reviving only those claims that had prescribed under § 9:2800.9 as opposed to an older prescriptive regime. As Lousteau points out, reading the revival provision as limited only to claims that prescribed after 1993 would not benefit anyone over the age of 46 years which would be a particularly absurd result when one considers what the Legislature was trying to do and the discussion surrounding the average age when victims generally come forward.

In support of its position, Holy Cross points to comments made by Senator Henry, again the legislator who proposed the § 2 revival mechanism. When HB 492, which would make claims for sexual abuse of a minor imprescribable, made it to the

State Senate, Senator Henry, noting that the amendment to § 9:2800.9 contained in HB 492 would remove the prescriptive period "for things moving forward," wanted to make the amendment "***a little bit*** retroactive. So should a case that prescribe [sic], they – we can ***go back a couple of years*** to make sure that those individuals um, get the care they need . . . ." (Rec. Doc. 22-3, Exhibit B Tr. of 6/7/21 HB 492 Final Passage at 2:12-16) (emphasis added).

      The Court does not interpret Senator Henry's comment such that "a little bit retroactive" suggests limiting claims to those that prescribed under § 9:2800.9 after 1993. First of all, there could conceivably be very old claims that prescribed under § 9:2800.9, which would involve going back more than "a couple of years." Second, Senator Henry's stated purpose in adding § 2's revival provision, given that prescription was being eliminated for all other victims prospectively, was to give those persons whose claims had already prescribed under a less generous standard, a chance to pursue their remedy in order to "get the care they need." It is clear from the legislative history that the sole limit that the Legislature intended to impose on revival was that the window would stay open for a brief period of time, after which it would close again and any previously barred claims that were not pursued would be forever barred. To allay concerns, the five year period was reduced to three years, which left § 2 being just "a little bit retroactive."[12]

---

[12]  Given that the Legislature was driven by concern for victims who lost their claim to prescription under more onerous prescriptive regimes, it is unclear how or whether the Legislature considered the plight of victims who had filed facially-prescribed lawsuits in the past and were unable to meet their burden as to *contra non valentem*. Presumably, those victims would face a res judicata problem if they attempted to file a second lawsuit relying on § 2's revival mechanism. It would seem rather unfair that the revival mechanism would benefit plaintiffs who for whatever reason did not pursue their rights in the past and provide no help for those who tried and failed based on prescription.

But even assuming that § 2 of Act 322 is not read to limit the revival component to claims that prescribed after § 9:2800.9 was enacted, Holy Cross argues that the 2021 amendments to § 9:2800.9 narrowed the scope of application for the statute such that juridical entities like Holy Cross are no longer included in the scope of the statute. Holy Cross bases this contention on the fact that § 9:2800.9 no longer incorporates the definition of "abuse" provided in Children's Code article 603. See note 10 above. That definition includes "inadequate supervision" as a basis for liability. Holy Cross's contention is that since Children's Code article 603 is now absent from the statute, the basis of the holding in *SS, supra*, is no longer present, and a corporate entity like Holy Cross cannot be the subject of § 9:2800.9 because even though a "person" can be a natural or juridical person, only a natural person can sexually abuse a minor. Thus, Holy Cross's position is that the 2021 amendment to § 9:2800.9 narrowed the definition of "sexual abuse of a minor," and under this narrower definition of abuse, the revival component cannot apply to an entity like Holy Cross.

Lousteau argues that the most likely reason that the reference to Children's Code article 603(1) was stricken was inadvertence because it just happened to be in the large section of text which was being removed to make sexual abuse claims imprescribable. See note 10 above. Lousteau argues that it is clear that the Legislature had no intent to alter and certainly not to narrow the definition of "abuse" in any way so as to exclude an action against potentially liable third parties. The Legislature understood that to truly remedy the injustice of sexual abuse all responsible parties, not just the perpetrator, must be brought to account for their actions (or inaction).

Interestingly, during this most recent 2022 regular session, the Legislature has amended La. R.S.§ 9:2800.9 to restore the reference to Children's Code article 603 in

the statute. Representative Hughes explained when speaking on behalf of House Bill 402 in the Committee on Civil Law and Procedure, that the deletion of Article 603 was unintentional, yet unfortunately some courts had interpreted that as excluding organizations and entities, which is not what was intended. (Rec. Doc. 49-1, Tr. 4/18/22 H.B. 402 at 2). As of this writing the bill has been passed by the House and the Senate, and presumably will become law.

Although Representative Hughes' comments about the original intent of Act 322 do in fact confirm Lousteau's theory about the deletion of Article 603 being unintentional, the Court must remain circumspect of post-enactment statements from legislators when determining legislative intent.[13] *See Red Stick Studio Dev., LLC v. State, Dep't of Econ. Dev.*, 56 So. 3d 181, 189 (La. 2011) (citing *E. Baton Rouge Par. Sch. Bd. v. Foster*, 851 So. 2d 985, 999 (La. 2003)).

From a purely textual standpoint, and completely ignoring for the nonce the legislative history associated with the enactment of Act 322—a legislative history that completely belies any suggestion that the Legislature intended to narrow La. R.S. § 9:2800.9 in any manner whatsoever—the Court does not agree that the removal of the reference to Children's Code article 603 compels the conclusion that entities like Holy Cross escape the reach of § 9:2800.9 and the revival provision of § 2. Even though the Supreme Court did point to the incorporation of Article 603 to support its holding in *SS*, given that a "person" need not be a natural person, and that § 9:2800.9 uses the term

---

[13] Representative Hughes also lamented when speaking at the 2022 committee hearing that some courts had interpreted the revival mechanism to only apply to individuals who were abused after 1993, which is contrary to what the Legislature intended, which was to apply the lookback window retroactively for *any* victim of childhood sexual abuse, regardless of when it occurred.

"person," indicating an intent to include juridical entities within the reach of the statute, the construction given to sexual abuse of a minor can conceivably be broad enough, even without the reference to Article 603, to include the manner in which an entity as opposed to a natural person may be responsible for committing such an act. In this vein, Lousteau makes an excellent point in contrasting the language of Civil Code article 2315.7, which explicitly limits exemplary damages "only to the perpetrator of the criminal sexual activity," see note 9 above. But § 9:2800.9 does not use this explicit language and therefore is arguably broader.

But when examining the legislative intent behind the amendments to § 9:2800.9, which again at every juncture was amended to broaden the rights of victims not to narrow them, it would be a particularly absurd result to conclude that an organization whose fault, whether by affirmative acts or by omissions, contributed to the sexual abuse of a child—and the Court is not suggesting that Holy Cross is at fault but that is the allegation in this case—would be allowed to assert a time bar that has been not present in the law since 1993 following amendments that were intended to broaden victims' access to justice. Holy Cross's interpretation of § 9:2800.9 would mean that the claim against the organization would revert back to a prior prescriptive regime and not only deny justice to victims, but continue to foist upon the tax payers and society as a whole the costs for the injuries caused. This result would be contrary to the legislative intent behind Act 322. The Legislature was clearly persuaded that the harm caused by the perpetrators of sexual abuse and the organizations that harbored them should be borne by them, shifting the burden from the victims and the taxpayers to the parties actually at fault.

For similar reasons the Court rejects Holy Cross's argument that the revival

provision only applies to the actual perpetrator of the sexual abuse because it uses the term "party." Holy Cross's argument, that by employing the term "party" the revival provision cannot affect claims against a separate juridical entity that only has indirect liability, is unpersuasive. In fact, use of the term "party" without qualification is certainly broader than saying any claim against "a natural person who was the perpetrator of sexual abuse," which is how Holy Cross would read § 2.

Certainly the post-enactment statements made in the 2022 legislative session in conjunction with HB 402 completely support Lousteau's position, but Holy Cross stresses that by proposing HB 402 the lawmakers were essentially conceding that as enacted in 2021 Act 322's language does not apply to claims that had already prescribed when § 9:2800.9 was enacted in 1993. The Court does not agree. It is clear that the Legislature never intended to narrow anything about how prescription applied to claims of childhood sexual abuse, and it did not intend to limit the revival provision to only some claims that had already prescribed. Unfortunately, however, the Legislature perhaps did not use the most precise language that would have foreclosed arguments like those being made in this case. The Court is persuaded that what the Legislature recognized in HB 402 is that it needed to be clearer so that textual arguments like the ones being raised here would not be credited in the courts.

Laws in derogation of established rights and principles are to be strictly construed. *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 186–87 (La. 1997). Where there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least rather than the most change in the existing body of the law. *Id.* (citing *Touchard v. Williams,* 617 So. 2d 885, 892 (La. 1993) (superseded by statute on other grounds)). But in the case of Act 322, there can be

no doubt but that the Legislature was driven by the belief that prior prescriptive statutes that applied to childhood sexual abuse were manifestly unjust and inadequate. As HB 492 worked its way through the legislative process in 2021, the legislators found ways to expand justice for survivors not to narrow them.

In sum, this Court's *Erie* determination is that § 2 of Act 322 applies to Lousteau's claims against Holy Cross. Assuming that Lousteau's claims against Holy Cross did in fact prescribe in 1970, § 2 of Act 322 "revived" them for the duration of the three-year lookback window. The question now becomes whether it is constitutionally permissible to revive the prescribed claims and strip Holy Cross of its prescription defense.

### Is Act 322's Revival Mechanism Unconstitutional?

Having concluded that Act 322, § 2 applies to Lousteau's claims against Holy Cross, the Court addresses the more difficult question of the constitutional validity of Act 322 § 2's revival provision.

Holy Cross argues that reviving Lousteau's prescribed cause of action would violate the Due Process Clause of the Louisiana State Constitution. The basis of this argument is that once a claim has prescribed and liberative prescription has accrued, the defendant has a vested right to assert the defense of prescription and the Legislature cannot take that away. According to Holy Cross, the Louisiana Supreme Court's jurisprudence confirms that legislation cannot revive a cause of action once prescribed consistent with the Louisiana Constitution. Holy Cross argues that this holds true regardless of the clear legislative intent to do so.[14]

---

[14] Holy Cross's due process arguments are grounded on the Louisiana Constitution not on the United States Constitution. As Lousteau points out, the United States Supreme

After raising arguments that Holy Cross's constitutional challenge is premature[15]

and that the Court should abstain from deciding it,[16] Lousteau argues that reviving a

---

Court long ago held that reviving a time-barred cause of action does not violate federal due process. *See Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 311 (1945) (citing *Campbell v. Holt*, 115 U.S. 620 (1885)). Lousteau suggests that the same should hold true under the Louisiana Constitution since the Louisiana and federal due process clauses are nearly identical in language. This suggestion is untenable given the repeated references in Louisiana's jurisprudence—which deals with the civilian concept of prescription not the common law concept of a statute of limitations—indicating that reviving a prescribed claim is not permissible under Louisiana law.

The Court also points out that Holy Cross's due process argument under the Louisiana Constitution is a facial challenge. In other words, Holy Cross has not raised the argument that its due process rights will be violated if it is forced to defend a claim based on conduct that occurred over 50 years ago and that would have prescribed decades ago under a prior prescriptive regime. *See Picone v. Lyons*, 601 So. 2d 1375, 378 (La. 1992) (citing La. Const. Art., I, § 2; U.S. Const. amend. XIV; *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (Cole, J., dissenting) (noting that requiring the defendant to defend a cause of action that arose more than twelve years earlier could very well deprive the defendant of a meaningful opportunity to be heard in a reasonable amount of time).

[15] Lousteau argues that Holy Cross's constitutional challenges are premature because Holy Cross did not comply with Federal Rule 5.1, which requires that a party filing a motion to draw into question the constitutionality of a federal or state statute must promptly file a notice in compliance with the rule and serve it on the proper attorney general. Lousteau suggests that unless the Court intends to reject all of Holy Cross's constitutional arguments, it would be premature to hear them until Holy Cross provides notice as required.

In response, Holy Cross points out that on March 25, 2022, it filed the required Notice of Constitutional Challenge of Statute as required by Rule 5.1 (Rec. Doc. 42), and served a copy on the Attorney General of Louisiana. Therefore, the prematurity argument has been mooted.

Further, although the state attorney general has not filed anything in this matter, Lousteau has provided a copy of the State's memorandum of law offered in support of the constitutionality of Act 322 that was filed in a similar state court lawsuit. (Rec. Doc. 41-1, Lousteau Exhibit 1). The Attorney General's position is that reviving a prescribed cause of action does not deprive a defendant of a vested right. The Attorney General's analysis is not persuasive.

[16] Lousteau argues that this Court should abstain from adjudicating the constitutionality of Act 322 under the Pullman abstention doctrine until such time as the state court would have the opportunity to rule upon it.

The Pullman abstention doctrine, deriving from *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496 (1941), holds that a federal court should abstain from

prescribed claim is not problematic because doing so does not impact a vested right. Lousteau argues that the right to a prescription defense in the case of child sexual abuse is especially non-vested and inchoate because *contra non valentem* applies so often to suspend the commencement of prescription; therefore, a defendant cannot look upon prescription as a vested right. In support of this contention Lousteau asserts that child sexual abuse claims are "extraordinarily distinct," given the long liberative prescriptive period applicable to the tort (now imprescribable), and even the rare availability of punitive damages. But even if a vested right is involved, Lousteau's position is that the Legislature has plenary power in Louisiana and can pass a law divesting vested rights so long as it does not impair the obligation of contracts, and because the right to assert a prescription defense is not a fundamental right, the Legislature can take it away. Lousteau points out that the Louisiana Constitution of 1921 had a textual provision

---

exercising its jurisdiction "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002) (quoting *Hawaii Housing Auth. V. Midkiff*, 467 U.S. 229, 236 (1984)). "By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Id*. at 652-53. For Pullman abstention to apply, the case must involve 1) a federal constitutional challenge to state action, and 2) an unclear issue of state law that, if resolved, would make it unnecessary for the federal court to rule on the federal constitutional question. *Id*. at 653.

It is beyond dispute that the important and complex state law issues raised in the motion to dismiss should be and ultimately will be decided definitively by the Louisiana Supreme Court. But Lousteau has not identified any specific state court case that this Court could abstain in deference to. Meanwhile, Lousteau filed his lawsuit in federal court relying upon Act 322 which he knew would be subject to a constitutional challenge under state law. For the most part, issues of federal law are minimal in this case. While the Court agrees that the validity of Act 322's revival provision is best suited for determination by the Louisiana Supreme Court, Lousteau has not suggested that he is willing to stay his case until the validity of § 2 makes it to the Louisiana Supreme Court in someone else's case. Rather he seeks to use abstention as a means of preventing Holy Cross from litigating its prescription defense while he continues to pursue his claims, which is not an appropriate use of the Pullman abstention doctrine.

prohibiting the divestment of vested rights but in the 1974 version it was removed. (Rec. Doc. 41, Opposition at 31 n.13).

Laws enacted by the Legislature are presumed to be constitutional. *Louisiana Fed'n of Teachers v. State*, 118 So. 3d 1033, 1065 n.37 (La. 2013). The party challenging the validity of a legislative instrument has the burden of proving it to be unconstitutional. *Id.* (citing *State v. Citizen,* 898 So. 2d 325, 334 (La. 2005)).

In Louisiana there is no prescription other than that established by legislation. La. Civ. Code art. 3457. The Legislature may create, shorten, lengthen or abolish prescriptive periods at its discretion. *Picone v. Lyons*, 601So. 2d 1375, 1377 (La. 1992). A defendant has no vested interest in a particular period of prescription or limitation. *Id.* at 1377 (citing *Martinez v. California*, 444 U.S. 277 (1980)). Thus, it is well-settled that the Legislature can lengthen a prescriptive period to make an extant, unprescribed cause of action viable for a longer period of time without violating the defendant's rights, *see, e.g., Achord v. City of Baton Rouge*, 489 So. 2d 1373, 1375 (La. App. 1st Cir. 1986), and it can shorten a prescriptive period to provide less time for a plaintiff to seek legal redress on a cause of action, so long as the change in the law allows a reasonable time for those affected to assert their rights, *see Lott v. Haley*, 370 So. 2d 521, 523–24 (La. 1979) (citing *Cooper v. Lykes*, 218 La. 251, 49 So.2d 3 (1950); *State v. Recorder of Mortgages*, 186 La. 661, 173 So. 139 (1937)). The reasoning supporting these well-settled principles is that statutes of limitation are remedial in nature and as such are generally accorded retroactive application. *Lott*, 370 So. 2d at 523-24 (citing *State v. Alden Mills*, 12 So.2d 204 (1943); *Shreveport Long Leaf Lumber Co. v. Wilson*, 197 So. 566 (1940); *DeArmas v. DeArmas*, 3 La.Ann. 526 (1848)). However, statutes of limitation, like any other procedural or remedial law, cannot consistently with state and federal constitutions

apply retroactively to disturb a person of a pre-existing right. *Id.* (citing *Orleans Parish School Board v. Pittman Construction Co.*, 261 La. 665, 260 So.2d 661 (1972)).

So for instance, a defendant may be just days away from the accrual of liberative prescription when the Legislature can move the "finish line" farther away by adding additional time to the prescriptive period or even make the claim imprescribable. Before liberative prescription has accrued, the defendant has no right to have the prescriptive period that was in effect when the cause of action arose continue to govern, regardless of his expectations. When determining whether a legislative change to a prescriptive period can operate retroactively (that is, apply to causes of action that accrued before the change went into effect) within constitutional limits, the pivotal issue that permeates the jurisprudence in this state is whether the change will disrupt a vested right. According to the Louisiana Supreme Court, "the legislature has always enjoyed the power to create new rights and abolish old ones ***as long as it does not interfere with vested rights***."[17]  *Morial v. Smith & Wesson Corp.*, 785 So. 2d 1, 19 (La. 2001)

---

[17] The Court pauses here to note that Lousteau's contention that the Legislature can do whatever it wants to vested rights under the current version of the Louisiana Constitution is meritless. This assertion runs contrary to the Louisiana Supreme Court's decision in *Bourgeois v. A.P. Green Industries, Inc.*, 783 So. 2d 1251 (La. 2001), wherein the Louisiana Supreme Court held that the Legislature could not, consistent with due process guarantees, enact a law to divest claimants of a vested property right.

The Court also rejects Lousteau's contention (and that of the Attorney General) that a person can be legislatively deprived of a vested right so long as there is no arbitrary or capricious government action involved. This case does not involve a challenge to government action as was the situation in the case cited by Lousteau and the Attorney General, *Coxe Property Management & Leasing v. City of New Orleans*, 294 So. 3d 1098, 1104 (La. App. 4th Cir. 2020). This case involves the facial constitutional validity of a statute, not the permissibility of the conduct of government actors. The Court notes that the *Bourgeois* court engaged in no discussion or analysis as to whether arbitrary or capricious government conduct was involved where a legislative act attempted to strip the plaintiff of his vested rights.

(citing *Reeder v. North,* 701 So.2d 1291, 1296 (La. 1997); *Crier v. Whitecloud,* 496 So.2d 305, 310 (La.1986)) (emphasis added).

The notion that it would be constitutionally permissible for the Legislature to revive a prescribed cause of action has been unequivocally rejected by the Louisiana Supreme Court on several occasions, albeit often in dicta. *See Hall v. Hall*, 516 So. 2d 119, 120 (La. 1987) (per curiam); *Bouterie v. Crane*, 616 So. 2d 657, 664 n.15 (La. 1993) (citing *Hall*, 516 So. 2d at 119); *Falgout v. Dealers Truck Equip. Co.*, 748 So. 2d 399, 407 (La. 1999).

Writing for the majority in *Louisiana Health Service & Indemnity Co. v. McNamara*, Justice Dennis expounded upon the problem with revival. 561 So. 2d 712, 718 (La. 1990). He explained that the right to plead prescription in defense to a claim on the obligation itself is "***property*** that cannot be taken from [the defendant]." *Id.* (emphasis added). Justice Dennis explained why the accrual of prescription is unlike statutes of limitation at common law, which are merely procedural bars to the enforcement of obligations. *Id.* Civilian prescriptive periods act to extinguish the civil obligation to which they apply. *Id.* Importantly, the patrimony of the obligor is increased when a claim prescribes.[18]  *Id.*

In *Elevating Boats, Inc. v. St. Bernard Parish*, 795 So. 2d 1153, 1164 (La. 2001),

---

[18]  In *Louisiana Health Service & Indemnity Co. v. Tarver*, 635 So. 2d 1090, 1098 (La. 1994), the Supreme Court clarified the use of the term "extinguish" in Justice Dennis's opinion. The term "extinguishment" is generally associated with peremption and not prescription because while peremption operates to "extinguish" a right, La. Civ. Code art. 3458, liberative prescription is a mode of barring actions as a result of inaction for a period of time, La. Civ. Code art. 3447. *Naghi v. Brener*, 17 So. 3d 919, 923 (La. 2009) (explaining the difference between peremption and prescription). Prescription does not terminate the natural obligation. *Id.* (citing La. Civ. Code art. 1762(1)). Of course, some Civil Code articles use the term "extinguish" in reference to prescription. *See, .e.g*., La. Civ. Code arts. 3453, 1762(1).

*overruled on other grounds* by *Anthony Crane Rental, L.P. v. Fruge*, 859 So. 2d 631

(La. 2003), Chief Justice Calogero, writing for the majority explained why a cause of

action cannot be revived once liberative prospection has accrued:

> [A]fter the prescriptive period on an obligation has run, an obligor gains the ***right*** to plead prescription. In such a situation, that ***right*** to plead prescription has already accrued and application of a lengthened prescriptive period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired." ***Thus, we have noted that the Legislature is without the authority to revive a prescribed claim***.

> *Elevating Boats*, 795 So. 2d at 1164 (citing 1 Marcel Planiol, *Treatise on the Civil Law*, § 243 (La. State Law Inst. trans. 1959) (12th ed. 1939); *Bouterie v. Crane,* 616 So.2d at 664 n. 15; *Hall,* 516 So.2d at 120 (La.1987) (per curiam) (emphasis both in original and added).

The appellate courts of the state and at least one federal judge in this district have

consistently held that the Legislature could not revive a prescribed claim. *Johnson v.*

*Roman Cath. Church for the Archdioceses of New Orleans*, 844 So. 2d 65, 69 n.2 (La.

App. 1st Cir. 2003); *City of New Orleans v. W.R. Grace & Co.*, No. 92-5, 1992 WL 125371

(E.D. La. May 21, 1992) (Duplantier, J.); *Orleans Parish Sch. Bd. v. United States*

*Gypsum Co.*, 892 F. Supp. 794, 806-07 (E.D. La. 1995) (Duplantier, Jr.) (citing

numerous Louisiana appellate court decisions).

Based on the foregoing, it would seem to be a foregone conclusion that the

Legislature cannot revive a prescribed cause of action. But in 1994 the Louisiana

Supreme Court issued a plurality decision in *Chance v. American Honda Motor Co.*, 635

So. 2d 177 (La. 1994), which has led some to question whether the Supreme Court has

begun to question its historically stalwart rejection of the Legislature's ability to revive a

prescribed cause of action. *Chance* dealt with an amendment to Civil Code article 3492

which suspended the running of prescription against permanently disabled minors in

products liability actions. While the *Chance* court concluded that the amendment at

issue was not intended to revive prescribed claims, *Chance* is significant because instead

of just outright rejecting the validity of legislatively reviving a prescribed cause of action,

which is what had occurred repeatedly in the past, the majority stated:

> Although prescriptive statutes are generally procedural in nature, the revival of an already prescribed claim presents ***additional concerns***. For while the defendant does not acquire anything during the running of the prescriptive period, once the time period has elapsed, the legislature grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. ***Because the defendant acquires the right to plead the exception of prescription, a change in that right constitutes a substantive change in the law as applied to the defendant. Thus, were we to interpret the amendment at issue to allow the revival of prescribed causes of action, the substantive rights of the defendant would be materially changed because he would be stripped of this acquired defense. Guided by the principles established in article 6, we require, at the very least, a clear and unequivocal expression of intent by the legislature for such an "extreme exercise of legislative power."***

*Chance*, 635 So. 2d at 178 (citing La. Civ. Code arts. 927 & 934; *St. Paul Fire & Marine*

*Ins. Co. v. Smith*, 609 So. 2d 809, 817 (La. 1992); *Thomassie v. Savoie*, 581 So. 2d 1031,

1034 (La. App. 1st Cir. 1991); *Hopkins v. Lincoln Trust Co*., 135 N.E. 267, 267 (N.Y.

1912)) (emphasis added).

Because the specific legislative act at issue in *Chance* did not contain a clear

expression of legislative intent to revive a prescribed claim, the Louisiana Supreme

Court declined to address the constitutional implications of reviving a prescribed claim.

The Supreme Court explained:

> Having found the required intent absent here, we do not reach the issue of whether the legislature has the authority to revive prescribed causes of action. ***Central to this determination is whether the right to plead***

> ***the defense of prescription is a constitutionally vested right.***
> ***Whether the right is vested or not***, the result reached in this case
> would be the same . . . .

*Chance*, 635 So. 2d at 179 n.6 (emphasis added).

Justice Hall authored a concurring opinion in *Chance*, joined by Chief Justice
Calogero, and citing Planiol, *Hall*, *Bouterie*, and *Louisiana Health Service & Indemnity*,
*supra*, explained that he would "squarely hold that the right to plead [] prescription is a
vested right," given the Supreme Court's prior jurisprudence and the civilian teachings.
*Id.* at 180 (Hall, J., concurring).

Thus, while *Chance* did not hold that the Legislature could revive a prescribed
cause of action, and while it did not hold that the Legislature could revive a prescribed
claim so long as it provided a clear and unequivocal expression of its intent to do so, the
decision evinced a departure from the numerous prior cases where the Supreme Court
had unequivocally rejected the suggestion that the Legislature could revive a prescribed
claim. Interestingly, however, *Chance* confirmed that the validity of revival would turn
on whether the right to plead prescription is a vested right.

Even though *Chance* was a plurality decision and therefore was not a decision
supported by the majority of the justices, just three years later, in *Cameron Parish*
*School Board v. Acands, Inc.*, 687 So. 2d 84 (La. 1997), the Louisiana Supreme Court
dealt with whether La. R.S. § 9:5644, relative to prescription of actions involving
asbestos abatement, operated to revive prescribed claims. The trial court had concluded
that it did, and declared the statute unconstitutional in violation of the defendant's due
process rights because prescription had already accrued. On direct appeal, and adhering
to *Chance*, the Supreme Court concluded that the statute did not contain a clear and
unequivocal intent to revive an already prescribed cause of action, and absent this sort

of "clear and unequivocal intent," the court found it unnecessary to address whether the right to plead prescription is a vested right that the Legislature cannot take away once accrued. *Id.* at 91. *Cameron Parish* was a four to three decision.

Like *Chance*, *Cameron Parish* did not hold that the Legislature could revive a prescribed cause of action, and it did not hold that the Legislature could revive a prescribed claim so long as it provided a clear and unequivocal expression of its intent to do so. But in a clear departure with the past, neither decision flatly rejected the possibility of revival. What *Chance* and *Cameron Parish* demonstrate is that the question whether the Legislature can revive a prescribed cause of action within constitutional limitations is now open to debate because the Supreme Court seems to have moved away from its previously implacable position that reviving a prescribed cause of action is *ipso facto* constitutionally impermissible. *Chance* and *Cameron Parish* did not, however, eschew the principle that the Legislature cannot deprive a party of a vested right when it amends laws governing prescriptive periods. What *Chance* and *Cameron Parish* left open, is whether the Supreme Court continues to view accrued prescription as a vested right, and if it is a vested right, does the Supreme Court continue to believe that the Legislature cannot take it away, or are there circumstances when the deprivation may be permissible.

To be sure, no judicial body is better suited to resolve these questions than the Louisiana Supreme Court. Unfortunately, a federal district court cannot certify a question of law to the Louisiana Supreme Court. *See* La. S. Ct. R. XII (limiting certification to the United States Supreme Court and the federal Circuit Courts of Appeal). So this Court is left to make an *Erie* guess and determine, in its best judgment, how the State Supreme Court would resolve the issue if presented with the same case.

The Court has not found any state appellate court decisions that help guide the *Erie* analysis.[19]

      This Court's *Erie* determination is that reviving a prescribed cause of action, and depriving a defendant of his right to plead prescription as a defense, would disrupt a vested right, and therefore is not constitutionally permissible under Louisiana law. The determination turns on the nature of prescription under a civil law system and under Louisiana law in particular, which is why federal standards and any authorities from common law jurisdictions are not particularly helpful.

      The Civil Code defines liberative prescription as a mode of barring actions as a result of inaction for a period of time, La. Civ. Code art. 3447. Thus, unlike peremption, which operates to destroy or extinguish the cause of action itself, liberative prescription merely prevents the enforcement of a right by action. *Naghi*, 17 So. 3d at 923 (citing *Pounds v. Schori*, 377 So. 2d 1195 (La. 1979); *Hebert v. Doctors Mem. Hosp.*, 486 So. 2d 717, 723 (La. 1986)). Because prescription can be renounced, interrupted, or suspended, it is an "inchoate right," especially when compared to peremption. *Id.* at 923 (quoting *Hebert*, 486 So. 2d at 723). Prescription is also subject to the doctrine of *contra non valentem* which contributes to its inchoate nature. *Id.* But once liberative prescription accrues, prescription loses its inchoate nature because only the defendant can renounce prescription, and interruption and suspension no longer apply to a prescribed claim.

---

[19] The *Doe v. Jesuit High School*, 331 So. 3d 426 (La. App. 4th Cir. 2021), decision cited by Lousteau is not on point because it addresses only the procedural aspects of La. R.S. § 9:2800.9. In *Barras v. O'Rourke*, 287 So. 3d 817 (La. App. 3d Cir. 2019), the court of appeal ostensibly concluded that the Legislature could revive a prescribed cause of action but that case involved an acknowledgement that was alleged to be an absolute nullity, which pursuant to Civil Code article 2032 does not prescribe. Thus, *Barras* involved no discussion of whether accrued liberative prescription constitutes a vested right.

*Contra non valentem* likewise does not apply to a prescribed claim because it only applies to delay the commencement of prescription, not the running of prescription. In other words, unaccrued prescription may be inchoate in nature but accrued prescription is not.

Further, even though the accrual of liberative prescription does not extinguish the cause of action in the same manner as peremption, by operation of law it alters the nature of the plaintiff's cause of action. Once liberative prescription accrues, the civil obligation that once existed is replaced by a natural obligation. La. Civ. Code art. 1762(1). A natural obligation arises from circumstances in which the law implies a particular moral duty to render a performance. La. Civ. Code art. 1760. But a natural obligation is not enforceable by judicial action. La. Civ. Code art. 1761. Thus, as Justice Dennis observed in *Louisiana Health Service & Indemnity Co. v. McNamara*, 561 So. 2d at 718, the patrimony of the defendant-obligor is increased when a claim prescribes. The value of the defense of prescription is implicitly recognized by Civil Code article 3453, which allows creditors and other persons having an interest in " the extinction of a claim [] by prescription" to raise the defense, even if the person in whose favor prescription has accrued renounces or fails to plead it.[20]

Thus, the right to assert a liberative prescription as a defense is more than just a mere procedural bar preventing the enforcement of a right. Like property, the defense of prescription has value to a defendant because once liberative prescription accrues

_____

[20] In the jurisprudence the term "extinguish" has come to be used solely with respect to peremption. After all, Civil Code article 3458 pertaining to peremption uses the term where as Civil Code article 3447 pertaining to prescription does not. But Civil Code articles 3453 and 1762(1) use the term "extinguish" in reference to the effect of prescription.

leaving only a natural obligation, no unilateral conduct by the plaintiff can disrupt the defense to render the obligation enforceable. Only the defendant can choose to either renounce the defense, decline to assert it, or to voluntarily perform the natural obligation that remains. And aside from the increase in patrimony attributable to the civil obligation itself being unenforceable, once liberative prescription accrues a defendant is no longer faced with expending his resources in defending the claim, which constitutes an additional increase in his patrimony. When a defendant pleads liberative prescription in defense to a prescribed claim, a judge has no discretion to compel the defendant to perform a natural obligation even if the equities of the case would seem to demand it. Once liberative prescription accrues, the right to plead the defense is "absolute, complete, unconditional, and independent of a contingency," and it is therefore vested. See *In re American Waste & Pollution Control Co.*, 597 So. 2d 1125, 1129–30 (La. App. 1st Cir. 1992) (citing *Voelkel v. Harrison,* 572 So.2d 724, 726 (La. App. 4th Cir. 1990) (defining a vested right)).

In sum, this Court's *Erie* determination is that the defendant's right to plead prescription once liberative prescription has accrued constitutes a vested property right under Louisiana law. Therefore, reviving a prescribed cause of action, and depriving a defendant of his right to plead prescription as a defense, would disrupt a vested right, and therefore does not comport with due process under Louisiana law. Holy Cross has met its burden of establishing that the revival provision of § 2 of Act 322 is not valid.[21]

---

[21] The Court found § 6.4 of the Louisiana Civil Law Treatise, Retroactivity of Legislation—A Brief Overview (Dec. 2021 update), by P. Raymond Lamonica and Jerry G. Jones, and the student comment authored by Emily M. Gauthier, Let Louisiana's Bastards Beat the Clock: It's Time to Amend Article 197, 80 La. L. Rev. 1437 (Summer 2020), to be very helpful and insightful when researching this case.

Finally, although the point is now moot, the Court finds no merit to Holy Cross's contention that § 2 of Act 322 violates the constitutional prohibition on bills of attainder found in both the Louisiana Constitution, Article 1 § 23, and the United States Constitution, article I § 9, cl. 3. A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon identifiable individuals without providing the protections of a judicial trial. *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 468-69 (1977) (citing *United States v. Brown*, 381 U.S. 437, 445 (1965); *United States v. Lovett*, 328 U.S. 303, 315-16 (1946); *Ex parte Garland*, 18 L. Ed. 366 (1867); *Cummings v. Missouri*, 18 L. Ed. 356 (1867)). Neither La. R.S. § 9:2800.9 nor § of Act 322 legislatively determine guilt, identify any individuals, or deprive a defendant of a judicial trial.[22]

Based on the foregoing, Holy Cross's motion to dismiss will be granted insofar as Holy Cross contends that Act 322 did not revive Lousteau's prescribed claims. But Lousteau has argued in the alternative that regardless of the fate of § 2 of Act 322, the doctrine of *contra non valentem* should apply to his case to delay the running of prescription in such a manner so as to render his complaint timely. As noted above the Court has not considered whether *contra non valentem*, which was not pleaded in the Original Complaint, applies in Lousteau's case. Although the magistrate judge denied Lousteau's motion for leave to amend his complaint, she noted that an amendment to assert *contra non valentem* would not be futile.[23] (Rec Doc. 50, Order at 6). The Court

---

[22] It is not necessary for the Court to conduct a separate analysis under state law. The Court notes that the state attorney general applies federal law to address both constitutional provisions. (Rec. Doc. 41-1, Lousteau Exhibit 1 at 9-10).

[23] Lousteau did not appeal Magistrate Judge Roby's ruling denying his motion for leave to amend so while the Court will allow Lousteau to amend his pleadings, he may do so solely to allege *contra non valentem*.

will allow Lousteau to file his amended complaint to allege facts in support of his

contention that *contra non valentem* applies to his case in such a way that his case

against Holy Cross should not be considered prescribed on its face. Lousteau must

amend his pleadings within 14 days from entry of this Order. Holy Cross may file its

motion to dismiss within the normal delays. If Lousteau does not amend his complaint

within the deadline given, the Court will issue a final judgment dismissing the case with

prejudice as prescribed, and Lousteau can proceed to the Court of Appeal. The discovery

stay remains in effect.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 22)** filed by

Defendants, Congregation of Holy Cross, Moreau Province, Inc. and Holy Cross College,

Inc. is **GRANTED** as explained above.

June 7, 2022

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE